[No. 37037.   En Banc.   July 18, 1963.]

ROBERT R. BEEZER, *Plaintiff and Relator,* v. THE CITY OF SEATTLE et al., *Defendant and Respondent,* PUBLIC UTILITY DISTRICT No. 1 OF PEND OREILLE COUNTY, *Intervenor and Relator,* THE SUPERIOR COURT FOR KING COUNTY, *W. R. Cole, Judge, Respondent.**

*Reported in 383 P. (2d) 895.

*Alfred J. Schweppe*, for relator.

*A. C. Van Soelen, A. L. Newbould, Richard S. White*, and *Richard W. Bartke*, for respondent.

*Clarence C. Dill* and *Lloyd W. Ek*, for intervenor.

HILL, J.—This is an application by the plaintiff, Robert R. Beezer, for a writ of mandamus to compel the Superior Court of King County to proceed as heretofore directed by this court:

"We, therefore, set aside the summary judgment of dismissal, and direct the trial court to proceed with the determination of whether the property of the P.U.D., which the city of Seattle now takes the position it must condemn, is an 'electric power and light plant or electric system, or any part thereof.' If it is not, the action should be dismissed and the city left free to proceed to exercise its power of condemnation. If it is, we do not presume to suggest to the trial court what its action should be, because, as we have indicated, the city may find that if it has no power of condemnation, it may still be possible to acquire the property by negotiation and proceed under its license; and it should not be precluded from so doing." *Beezer v. Seattle* (1962), 60 Wn. (2d) 239, 243, 373 P. (2d) 796, 798.

The foregoing statement from the *Beezer* case makes clear the factual issue for determination in the litigation now pending in the Superior Court of King County (King County Superior Court civil cause No. 576444, Robert R. Beezer, Plaintiff, v. City of Seattle, Defendant; Public Utility District No. 1 of Pend Oreille County, Washington, Inter-

venor). This determination is necessary because of our statute[1] which has at all times since 1933 prohibited the condemnation by a city of the

" . . . electric power and light plant or electric system, or any part thereof, belonging to or owned or operated . . . by a public utility district."

The city of Seattle has, at all times, taken the position that while the property of the public utility district which it proposes to condemn does not fall within this prohibition, nevertheless it is unnecessary to determine that fact because its license from the Federal Power Commission gives it the authority to condemn any property of the public utility district necessary to the development of the hydroelectric project it is licensed to develop and operate; in short, that it can exercise (under its license) a power which the state law has, since practically the inception of public utility districts, prohibited it from exercising.

We understand the reluctance of the Superior Court of King County to proceed, as we have directed, because of an intervening decision of the United States Court of Appeals for the District of Columbia in *Public Util. Dist. No. 1 of Pend Oreille Cy. v. Federal Power Comm.* (August 30, 1962), 308 F. (2d) 318, cert. den. (1963), 372 U. S. 908, 9 L. Ed. (2d) 716, 83 S. Ct. 719, petition for rehearing denied, 372 U. S. 956, 9 L. Ed. (2d) 980, 83 S. Ct. 950. This reluctance is doubtless strengthened by the concessions of counsel in their briefs in a recent motion to dismiss an appeal, and our own statements in the opinion denying the

---

[1]"Every city or town owning its own electric power and light plant may exercise the power of eminent domain as provided by law for the condemnation of private property for any of the corporate uses or purposes of the city or town: *Provided,* That no city or town shall acquire, by purchase or condemnation, any publicly or privately owned electric power and light plant or electric system located in any other city or town except with the approval of a majority of the qualified electors of the city or town in which the property to be acquired is situated; *nor shall any city* or town *acquire by condemnation the electric power and light plant or electric system, or any part thereof, belonging to* or owned or operated by any municipal corporation, mutual, non-profit, or cooperative association or organization, or by a *public utility district.*" RCW 35.84.030. (Italics ours.)

motion to dismiss (*Beezer v. Seattle* (Oct. 2, 1962), 60 Wn. (2d) 652, 375 P. (2d) 256).

The city of Seattle insists, and the King County Superior Court is apparently inclined to agree, that the United States Court of Appeals decision has rendered moot, and is res judicata of, the litigation now pending in that court.

The issues involved in that litigation are of such importance, and we are so completely convinced that we are right in the position taken in our opinion in *Beezer v. Seattle* (Public Util. Dist. No. 1 of Pend Oreille County, Intervenor), July 12, 1962, 60 Wn. (2d) 239, 373 P. (2d) 796, that we are unwilling, absent a decision by the United States Supreme Court, to accept the opinion of the United States Court of Appeals as decisive of those particular issues.

We recognize the finality of the Court of Appeals decision in *Public Util. Dist. No. 1 of Pend Oreille Cy. v. Federal Power Comm.*, *supra*, insofar as it determines that the city of Seattle—and not Public Utility District No. 1 of Pend Oreille County—is entitled to a license from the Federal Power Commission to develop its hydroelectric project on the Pend Oreille River. We recognize also that our statute (RCW 35.84.030) does not preclude the city of Seattle from exercising that license and was no bar to its issuance. We are here concerned only with a limitation on the manner of its exercise. Our statute does not prohibit the city from condemning the property of the public utility district (hereinafter called P.U.D.) unless that property is its "electric power and light plant or electric system, or any part thereof."

When, in 1930, the state adopted (by the initiative) the public-utility-district law, it contained, and still does, a provision prohibiting such a district from condemning a public utility owned by a city or town (RCW 54.16.020). In 1933, the legislature made the prohibition work both ways —by forbidding any city or town from acquiring by condemnation

". . . the electric power and light plant or electric system, or any part thereof, belonging to or owned or operated . . . by a public utility district." RCW 35.84.030.

The obvious wisdom and desirability of such a prohibition has not heretofore been questioned, though public power has here moved further and faster through municipal corporations of varying character than in any other state; nor has the power of the state to place such a prohibition on the municipal corporations created by it been questioned.

Can the Federal Power Commission by a license granted to a city, existing under and by virtue of the laws of the state of Washington, give it a power which it has been prohibited from exercising by that state?

Here, stripped of all the trappings of res judicata and federal pre-emption, is the heart of this controversy. It presents a problem in federal-state relationships which can be decisively answered only by the United States Supreme Court.

■ Our right to determine the meaning of the statutes of this state is clear; and it is equally clear that in the construction of federal statutes only the decisions of the Supreme Court of the United States are binding upon us. As we said in *Home Ins. Co. of New York v. Northern Pac. R. Co.* (1943), 18 Wn. (2d) 798, 808, 140 P. (2d) 507, 147 A.L.R. 849:

"When a Federal statute is construed by a United States court of appeals, such construction is entitled to great weight with us when the same statute is involved in a case we are considering, but it is not binding on us if we do not deem it logical or sound. . . .

" . . . In order that there may be no doubt about what the rule is in this state, we now declare it to be that the construction placed upon a Federal statute by the inferior Federal courts, while entitled to great weight by the courts of this state, is not binding upon them."

■ The refusal of the Supreme Court of the United States to review by certiorari the decision of the Court of Appeals for the District of Columbia adds nothing to that decision as it is not an expression by the Supreme Court of an opinion on the merits. *Elgin, J. & E. R. Co. v. Gibson* (1957), 355 U. S. 897, 2 L. Ed. (2d) 193, 78 S. Ct. 270; *Brown v. Allen* (1953), 344 U. S. 443, 491-92, 97 L. Ed. 469, 507, 73 S. Ct. 397, 437, 439; *United States v. Carver*

(1923), 260 U. S. 482, 490, 67 L. Ed. 361, 364, 43 S. Ct. 181, 182.

Nor is res judicata applicable in the present case. The proceeding in the Court of Appeals for the District of Columbia (*Public Util. Dist. No. 1 of Pend Oreille Cy. v. Federal Power Comm., supra*) was the review of an administrative order of the Federal Power Commission granting a license to the city of Seattle. The parties were the city of Seattle, the Pend Oreille County P.U.D. (both seeking a license), and the Federal Power Commission.

The case now pending in the King County Superior Court is a taxpayer's suit in which Robert R. Beezer is plaintiff, the city of Seattle is defendant, and the Pend Oreille P.U.D. is an intervenor. The subject matter is not the granting of a license under a federal statute, but whether the Federal Power Commission license having been granted the properties of the Pend Oreille County P.U.D., sought to be condemned by the city of Seattle, are its "electric power and light plant or electric system, or any part thereof." If that question is answered in the affirmative, there comes the further question: Has the city of Seattle the power to proceed with a condemnation of such properties? The answer is clearly in the negative so far as our state statutes are concerned, but there is the additional question of whether the Federal Power Commission license can give the city of Seattle such power notwithstanding the express prohibition of the state statute.

■ The subject matter, the parties, and the purpose of the proceedings are different; hence, the doctrine of res judicata does not apply. See *Burke Motor Co. v. Lillie* (1952), 39 Wn. (2d) 918, 239 P. (2d) 854; *Curtiss v. Crooks* (1937), 190 Wash. 43, 66 P. (2d) 1140.

Somewhat paradoxically we never reach this burning controversy, if it is determined that the property of the P.U.D. which the city seeks to condemn is *not* its "electric power and light plant or electric system, or any part thereof," within the purview of RCW 35.84.030.

■ The opinion of the Court of Appeals for the District

of Columbia, to which we have been referring, after holding that Seattle has the right to condemn any property of the P.U.D. despite our statutory prohibition, says that anyway the properties of the P.U.D., which the city of Seattle seeks to condemn, do not fall within the prohibition.

This later declaration seems to us no more than an advisory opinion on an issue then, and now, properly pending before the Superior Court of King County which we have heretofore directed that court to determine. This is the type of determination which the Supreme Court of the United States recently referred to as a "preliminary guess" regarding local law. *Leiter Minerals, Inc. v. United States* (1957), 352 U. S. 220, 229, 1 L. Ed. (2d) 267, 275, 77 S. Ct. 287, 292.

Mr. Justice Harlan, in his concurring opinion in *Tacoma v. Taxpayers of Tacoma* (1958), 357 U. S. 320, 342, 2 L. Ed. (2d) 1345, 1358, 78 S. Ct. 1209, 1221, said:

" . . . I do not understand the Court to suggest that the Federal Power Act endowed the Commission and the Court of Appeals with authority to decide any issues of state law if such law were deemed controlling, or that had the Court of Appeals undertaken to do so, such a determination would have foreclosed re-examination of such a decision in other proceedings."

It is our view that the decision and the opinion of the Court of Appeals for the District of Columbia in *Public Util. Dist. No. 1 of Pend Oreille Cy. v. Federal Power Comm., supra,* is not decisive of the issues now pending in the Superior Court of King County, and that court should proceed in accordance with our former direction.

The writ of mandamus will issue.

OTT, C. J., WEAVER, HUNTER, and HALE, JJ., concur.

DONWORTH, J. (dissenting)—This is the fourth time this case has been before us in the past year. (*Beezer v. Seattle,* 60 Wn. (2d) 239, 373 P. (2d) 796 (1962), and *Beezer v. Seattle,* 60 Wn. (2d) 652, 375 P. (2d) 256 (1962); in addition, a motion for a stay of proceedings made by the city of Seattle was argued and denied without opinion on November 19, 1962.)

The present proceeding is an application for a writ of mandamus to compel the superior court to proceed with the trial of the cause on the merits as directed by this court in the decision first above cited.

The history of this litigation is described in some detail in the dissenting opinions in the two prior decisions.

The last paragraph of the first dissent reads as follows:

"Because the F.P.C. did not find it necessary to decide the question urged upon us by appellants and for the further reason that the court of appeals has exclusive jurisdiction of the controversy, it is my opinion that the trial court correctly held that it had no jurisdiction of the controversy, and its judgment dismissing the action should be affirmed."

When the case came before us the second time, the United States Court of Appeals for the District of Columbia had just rendered its decision upholding the order of the Federal Power Commission, issued July 10, 1961, granting a license to the city of Seattle to construct and operate the Boundary Dam, and denying the P.U.D.'s application for a similar license with respect to its proposed adjacent Z Canyon project. See *Public Utility Dist. No. 1 of Pend Oreille Cy. v. Federal Power Comm.*, 308 F. (2d) 318.[2]

---

[2]The pertinent portion of the decision of the Court of Appeals states:

"What precedes makes it clear that the State statute here involved, even if according to its own terms it is applicable, cannot make it impossible for Seattle as a federal licensee to condemn under the federal statute. Were it otherwise—i.e., if indeed the limitation of the state-granted right of eminent domain prevented the exercise of federally-granted power of condemnation in the area proscribed by it—PUD's argument that it disables Seattle in this situation could not be upheld. For, it does not appear that the land owned by PUD and needed by Seattle is a part of the former's electric plant or system which the Washington statute protects from condemnation by a city or town. The record does not show that the property here involved is used by PUD in its operations, or that in the future it will be useful to PUD in any way except in connection with its Z Canyon project which has been foreclosed by the grant of the license to Seattle. So, after the City's license is finally affirmed and it begins condemnation, the site now owned by PUD will not be in any sense a part of its electric plant or system and the State statute, even if in this situation it were effective according to its terms, would not prevent Seattle from condemning the needed land."

The majority opinion of this court, denying the city's motion to dismiss the P.U.D.'s appeal from the trial court's dismissal of the case for lack of jurisdiction, concluded as follows:

"We are advised that Public Utility District No. 1 of Pend Oreille County will petition the Supreme Court of the United States to review, by certiorari, the circuit court's affirmance of the order of the Federal Power Commission; and, pending such review, we do not accept the conclusions of the circuit court as res judicata of the issues heretofore determined by this court in its opinion of August 3, 1962. Nor do the conclusions of the circuit court render moot the issues presented to us for determination, *unless, and until,* the judgment of the circuit court becomes final and binding on Public Utility District No. 1 of Pend Oreille County, Washington." (Italics mine.)

In the dissenting opinion, it was stated that the controversy before this court was then moot because the sole issue of fact to be tried in the superior court had become immaterial under the decision of the court of appeals. It was there said:

". . . It could become material only if the United States Supreme Court should (a) grant the public utility district's proposed petition for certiorari and (b) subsequently reverse the decision of the Court of Appeals. . . ."

Now that the P.U.D. *has* petitioned the United States Supreme Court for a writ of certiorari to review the decision of the Court of Appeals, and its petition *has been* denied (372 U. S. 908, 9 L. Ed. (2d) 716, 83 S. Ct. 719), and notwithstanding the fact that the P.U.D. has petitioned for a rehearing of its certiorari petition and that the latter has been denied by the Supreme Court (372 U. S. 956, 9 L. Ed. (2d) 980, 83 S. Ct. 950), the majority of this court still persist that "we are so completely convinced that we are right in the position taken in our opinion" in the first *Beezer* case (60 Wn. (2d) 239, 373 P. (2d) 796), "that we are unwilling, absent a decision by the United States Supreme Court, to accept the opinion of the United States Court of Appeals as decisive of those particular issues."

This position seems to me to be inconsistent with the statement of the majority in the second *Beezer* decision to the effect that the issues would not become moot "unless, and until" the judgment of the court of appeals should become final and binding on the P.U.D.

That judgment is now final and binding on the P.U.D., and the original issues before us have become moot, but the majority refuses to accept the decision of the only court that has jurisdiction to decide these issues unless and until the United States Supreme Court reviews that decision. Since that court has refused to review the decision of the court of appeals, I see no escape from the conclusion that the litigation is now ended.

Even if the views expressed in the two prior dissents be considered as premature, the issues before the superior court are now certainly moot. The very things that the majority previously said would cause the issues to become moot have now occurred, and, if there ever was any basis for a contrary holding, there is now no basis for the majority opinion in the present appeal.

In my opinion, the writ of mandamus should be denied.

ROSELLINI and HAMILTON, JJ., concur with DONWORTH, J.

FINLEY, J. (dissenting)—I fully concur in Judge Donworth's dissent. In my judgment, its logic and common-sense views are unanswerable.

---

October 7, 1963. Petition for rehearing denied.