633 P.2d 1241

**Raymond MEDRANO, Plaintiff-Appellee,**

v.

**RAY WILLIS CONSTRUCTION COMPANY and Employers Casualty Company, Defendants-Appellants.**

**No. 5097.**

Court of Appeals of New Mexico.

Sept. 8, 1981.

William G. W. Shoobridge, Neal & Neal, Hobbs, Lynn Pickard, Pickard & Singleton, Santa Fe, for defendants-appellants.

Clifford L. Payne, Lovington, for plaintiff-appellee.

## OPINION

SUTIN, Judge.

In February, 1980, plaintiff suffered an injury by accident arising out of and in the course of his employment. Beginning March 21, 1980 and ending May 22, 1980, defendants paid plaintiff maximum compensation benefits of $201.04 weekly for 10 weeks for a total of $2,001.40, and also paid $4,569.01 for surgical, hospital and medical expenses.

For some unaccountable reason not disclosed in the record, payment of compensation benefits ended. On May 29, 1980, plaintiff filed his "Complaint To Recover Damages [sic] For Workmen's Compensation." No reference was made to prior payments made by defendants. By way of Answer, defendants admitted that plaintiff suffered an accidental injury arising out of and in the course of his employment and was earning an average weekly wage in excess of $275.00. Defendants denied that plaintiff suffered injuries to his chest and stomach as a result of said accident and denied that plaintiff suffered permanent disability. By way of affirmative defenses, defendants claimed: (1) They "tendered to the Plaintiff all of the compensation to which he is entitled under the Workmen's Compensation Act * * * * " and (2) "That the compensation that was paid was paid by mistake of fact * * * and, by reason thereof, the Defendants have no responsibility under the * * * Act * * * for the payment of any medical expenses."

Based upon these pleadings, plaintiff sought to recover compensation benefits for permanent disability from the date of the accident. Thus the case went to trial.

Trial consisted of the testimony of plaintiff and the depositions of two doctors. De-

fendants established by their record, payment of compensation benefits between the date of the accident to May 22, 1980, as shown above. The trial court found, *inter alia*:

7. As a direct result of plaintiff's accidental injury, plaintiff was totally disabled from March 18, 1980, for a period of nine months and is therefore entitled to compensation at the rate of * * * ($201.04) per week for that period of forty weeks.

8. Additionally, defendants owe two-thirds of the medical expenses incurred.

Judgment was entered in accordance with these findings and defendants appeal. We affirm.

By the court's findings, conclusions and judgment, the trial court allowed plaintiff double recovery for compensation benefits from the date of injury or disability from March 18, 1980 to May 22, 1980. During this period of time, defendants paid plaintiff $2,001.40 for compensation and $4,569.01 for all medical and hospital expenses.

The trial court found that defendants paid weekly compensation benefits to plaintiff for ten weeks at $201.04; that plaintiff was totally disabled from March 18, 1980 for a period of nine months and is therefore entitled to compensation at the rate of $201.04 per week for that period of 40 weeks.

The court concluded that judgment should enter for compensation at the rate of $201.04 per week *from the time of injury for nine months*; that judgment should be entered for ⅔ of the medical expenses [net $4,569.01].

The judgment entered, which had been prepared by plaintiff, gave judgment to plaintiff "for compensation at the rate of Two Hundred, One Dollars and Four Cents ($201.04) per week *from the time of the injury for nine (9) months*," and granted judgment for ⅔ of the medical expenses expended.

Under this judgment, plaintiff can recover an amount of $6,570.01 for the period March 21, 1980—May 22, 1980 which amount defendants had previously paid plaintiff.

■ The trial court was led into this error by plaintiff's requested findings, conclusions and judgment tendered to the court and adopted. No objection was made by defendants, nor was this matter raised in this appeal. Nevertheless, we believe this error was an oversight. It was not the intention of plaintiff to recover $6,570.41 twice, nor defendants' intention to pay it twice. To avoid subsequent litigation, the judgment will be ordered amended on remand.

Unfortunately, no evidence was presented nor findings made on the purpose, reason or effect of defendants' payment of compensation benefits to plaintiff at the time of disability. It could play a key role in the solution of legal problems involved in the voluntary payment of workmen's compensation benefits.

Before closing their argument, defendants discussed the cases of *Perea v. Gorby*, 94, N.M. 325, 610 P.2d 212 (N.M.App.1980) and *Romero v. S.S. Kresge Co.*, 95 N.M. 484, 623 P.2d 998 (N.M.App.1981). *Perea* held that admissions by defendants that they voluntarily paid plaintiff workmen's compensation benefits for eight consecutive months for temporary total disability as a result of a back injury sustained in the course of employment constitute an admission that disability was a natural and direct result of the accident and operated to relieve plaintiff of the burden of establishing any casual connection as a medical probability by expert medical testimony. *Romero* held that *Perea* was not binding because two members of the panel concurred in the result, and said:

* * * The rule of law from *Michael v. Bauman, supra*, [76 N.M. 225, 413 P.2d 888 (1966)] and *Armijo v. Co-Con Construction Co., supra*, [92 N.M. 295, 587 P.2d 442 (N.M.App.1978)] is clear—voluntary payment of compensation benefits is merely *competent evidence as to any issue in a workman's compensation suit*, and does not create any presumptions or

shifts in the original burden. [Emphasis added.] [623 P.2d 1000.]

"Competent evidence" is defined in *Chiordi v. Jernigan*, 46 N.M. 396, 402, 129 P.2d 640 (1942). Omitting citations, it said:

Competent evidence means that which the very nature of the things to be proved requires as the fit and appropriate proof in the particular case. *It is evidence which in legal proceedings is admissible for the purpose of proving a relevant fact.* [Emphasis added.]

■ "Competent evidence as to any issue" is not limited to "any *one* issue." It means "Competent evidence as to *every* issue." Carried to its logical conclusion, proof of payment by defendants to plaintiff of compensation benefits is proof of every relevant fact in a claim for workmen's compensation. Thus, when defendant proved, during plaintiff's case in chief, that it paid plaintiff $6,570.41 in workman's compensation benefits, it was competent evidence that proved every relevant fact necessary under § 52–1–28—that portion of the Act which allows a workman to recover compensation benefits. This includes proof of that portion of the section which allows compensation "when the disability is a natural and direct result of the accident."

The difference between *Perea* and *Romero* is the difference between an admission of a relevant fact and proof of a relevant fact. In *Perea*, the court said:

By paying plaintiff workmen's compensation benefits, defendants admit the disability was a natural and direct result of the accident. [Id., 94 N.M. at 329, 610 P.2d 212.]

*Romero* says, in effect:

By defendant paying plaintiff workmen's compensation benefits, this is competent evidence that the disability was a natural and direct result of the accident.

An unsuccessful attempt was made in *Romero* to reconcile the diversity of New Mexico cases on this subject matter [623 P.2d 1001, Sutin, J., dissenting].

■ The sole issue in this appeal is whether plaintiff established as a medical probability by expert testimony that his disability was a natural and direct result of the accident. This issue is based upon § 52–1–28(B) which reads:

*In all cases where the defendants deny that an alleged disability is a natural and direct result of the accident,* the workman must establish that causal connection as a medical probability by expert medical testimony. No award of compensation shall be based on speculation or on expert testimony that as a medical possibility the causal connection exists. [Emphasis added.]

To "deny" is a condition precedent to the duty of a workman to establish medical probability. Under what circumstances the denial should be made has not been determined. A duty placed upon a workman to prove a fact at trial should not be imposed unless the workman has written notice of the denial by defendants. The burden is on defendant to establish the denial. It can be done by way of an affirmative defense or some other pleading. The record does not disclose any denial by defendants. As a result, no duty was imposed upon plaintiff to establish a causal connection as a medical probability by expert medical testimony.

Nevertheless, we read the short depositions of the two doctors. After a previous question asked on medical probability, one of the doctors was asked this question to which he made this answer:

Q. What I am asking, Doctor, just as a medical probability, it was medically probable that this [disability] was a natural and direct result [of the accident]?

A. * * * yes.

There is substantial evidence that plaintiff established that causal connection as a medical probability.

The judgment is affirmed but this case is remanded to the district court to amend the judgment to read:

(1) That judgment is entered in favor of plaintiff, Raymond Medrano, for compensation at the rate of Two Hundred One Dol-

lars and Four Cents ($201.04) per week from May 22, 1980 to December 19, 1980.

(2) Delete from the Judgment:

That judgment enter in favor of Plaintiff, Raymond Medrano for two-thirds (⅔) of the medical expenses expended and * * * *

Plaintiff is awarded $1,250.00 attorney fee for services rendered in this appeal. Costs to be paid by defendants.

IT IS SO ORDERED.

LOPEZ, J., concurs.

HERNANDEZ, C. J., dissents.

HERNANDEZ, Chief Judge, dissenting.

I respectfully dissent.

In my opinion the defendants' sole point of error has merit; that the plaintiff failed to establish that as medical probability his disability was a natural and direct result of the accident. In my opinion the testimony of the doctors established a mere possibility that plaintiff's injury resulted from the accident. Dr. Laws testified in pertinent part as follows:

Q. All right. Now, Doctor, as a medical probability from the history that you received of the injury and from your physical examination of the patient, could you say that, as I state, as a medical probability, that the disability you found from your examination was a natural and direct result of the accident or injury that he related to you?

A. Well, this is a very difficult area, as you know, especially when someone has had prior injury and disruption of the natural barriers to the outside, so to speak, with an incision that involves the same area of recent injury or question of injury that relates to the symptoms. The issue, I think, cannot, in hundred percent, be said that it is absolutely related to the accident, although the circumstances and the onset of the tenderness and findings are compatible with at least recent exacerbation of potentially chronic problems; but I don't think medically, other than the issue of acute symptoms, I don't think I can, for a hundred percent, say that it was related absolutely to the recent injury, nor can I say, was it a chronic finding without having had prior exposure.

Q. What I am asking, Doctor, just as a medical probability, it was medically probable that this was a natural and direct result?

A. I think that the sudden onset of increased acute abdominal pressures can potentially, in an area that was, in the past, had been involved in an operative intervention with potentially weak areas, potentially could have herniated acutely, yes.

Dr. Zadeh testified in pertinent part as follows:

Q. Now taking the history that Mr. Medrano gave you of complaining that he was hit in the abdomen area with a heavy pipe, taking that as a history of what he had told you his problem is, is it reasonably probable that the injuries that you treated and claimed and the disability that you are testifying to is a result of the accident as he described it to you?

A. I cannot say this is true, because as I said before, hernia comes—number one, there has to be some defect in some part of the abdomen. Number two, anything which can cause increased intra-abdominal pressure, even defecation, might cause hernia, too.

Q. But definitely a heavy pipe falling on your abdomen could cause it?

A. Possibly.

Q. Is it medically probable?

A. Possible.

Q. Okay. In other words, if I understand you correctly, any type of pressure—

A. That's true.

Q. —could cause it, but certainly the pressure of a heavy object would—

Q. —would possibly cause it?

A. Yes, sir.

Q. Defecation—

A. May do it, too.

Q. —possibly?

A. That is true.

Q. Any pressure it is possible?

A. Yes, sir.

Q. So it is possible that the history he gave you could have caused this?

A. Possible.