648 P.2d 1192

Casimiro GONZALES, Plaintiff-Appellee,

v.

STANKE–BROWN & ASSOCIATES,
INC. and North River Insurance
Co., Defendants-Appellees,

and

Mountain States Mutual Casualty
Company, Defendant-Appellant.

No. 5462.

Court of Appeals of New Mexico.

July 1, 1982.

James E. Snead, James G. Whitley, Jones, Gallegos, Snead & Wertheim, P. A., Santa Fe, for defendant-appellant.

Pedro G. Rael, Los Lunas, for plaintiff-appellee.

Deborah S. Davis, Shaffer, Butt, Thornton & Baehr, P. C., Albuquerque, for defendants-appellees.

## OPINION

WOOD, Judge.

In this worker's compensation case, the trial court found that plaintiff was entitled to compensation benefits on the basis of two accidents while working for the same employer. At the time of the first accident, on October 1, 1976, North River (North River Insurance Company) was the employer's compensation insurer. At the time of the second accident, on December 21, 1979, Mountain States (Mountain States Mutual Casualty Company) was the employer's compensation insurer.

The trial court found that plaintiff had a 45 percent permanent partial disability as a result of the 1976 accident and required North River to pay compensation benefits for 45 percent partial disability, but only until the date of the second accident. The trial court found that plaintiff had a 10 percent permanent partial disability as a result of the 1979 accident and required Mountain States to pay compensation benefits for a 55 percent partial disability from the date of the 1979 accident. The trial court apportioned liability for attorney fees and costs on the basis of the liability of each insurance company to pay compensation benefits.

Mountain States appeals. We (1) summarily answer the issues of notice and disability; (2) decide the liability of each insurance company to pay compensation; and (3) decide the liability of each insurance company to pay attorney fees and costs.

*Issues Answered Summarily*

(a) Plaintiff did not give written notice of the 1979 accident. Mountain States contends it did not have actual knowledge of the 1979 accident. Plaintiff testified that he told his employer, in a telephone conversation in December, 1979, that he had gotten hurt "at work again", that he "couldn't move no more" and "wanted to go to the emergency room" of the hospital. The employer's representative agreed that the telephone conversation occurred in December, 1979, and testified: "He said that he was hurt. I can't remember the exact words but his back was hurt again, and he went to the emergency room." The employer's representative could not recall whether plaintiff said that the back problem was on the job or off the job. The testimony of plaintiff and the employer's representative sustains the trial court's refusal to adopt Mountain States' requested finding of no actual knowledge of the December, 1979 accident. Section 52–1–29(B), N.M.S.A. 1978; *Collins v. Big Four Paving, Inc.*, 77 N.M. 380, 423 P.2d 418 (1967); *Beckwith v. Cactus Drilling Corporation*, 84 N.M. 565, 505 P.2d 1241 (Ct.App.1972); *Rohrer v. Eidal International*, 79 N.M. 711, 449 P.2d 81 (Ct.App.1968).

(b) The trial court found a 45 percent partial disability in existence prior to the December, 1979 accident, and a 10 percent partial disability as a result of that accident. Thus, after the second accident, plaintiff's partial disability was 55 percent. Mountain States claims a lack of substantial evidence to support an increased disability as a result of the December, 1979 accident.

█ A physician testified that plaintiff had an increased medical impairment of 10 percent after the December, 1979 accident. Mountain States correctly points out that impairment does not automatically equate with disability. *Anaya v. New Mexico Steel Erectors, Inc.*, 94 N.M. 370, 610 P.2d 1199 (1980). This, however, does not benefit Mountain States. The physician also testified that limitations in plaintiff's motion increased after the December, 1979 accident. Plaintiff testified as to a decreased ability to perform certain tasks of his job as a cement finisher, such as use of a sledge hammer and the handling of forms. Plaintiff also testified that since the December, 1979 accident, he finishes fewer yards of cement per day. This testimony supports the ruling that plaintiff's disability increased as a result of the December, 1979 accident. *Anaya v. New Mexico Steel Erectors, Inc., supra; Garcia v. Genuine Parts Co.*, 90 N.M. 124, 560 P.2d 545 (Ct.App. 1977); *see Hales v. Van Cleave*, 78 N.M. 181, 429 P.2d 379 (Ct.App.1967).

*Liability of Each Insurance Company to Pay Compensation*

█ Where, as here, the worker has had successive compensable disabilities, the liability of successive compensation insurers for the same employer is not different, conceptually, from the liability of successive employers. Thus, in considering the liability of the compensation insurers in this case, successive employer cases are applicable.

The trial court ruled that North River must pay compensation for a 45 percent partial disability existing prior to the December, 1979 accident; however, after that accident, North River was not required to

pay any compensation and Mountain States was required to pay the entire 55 percent partial disability. In so ruling, the trial court followed *Powers v. Riccobene Masonry Const., Inc.,* 97 N.M. 20, 636 P.2d 291 (Ct.App.1980). The reasoning by which the result was reached in *Powers* is an aberration; the reasoning departs from both judicial decisions and the statutory law of New Mexico.

*Powers* states:

There are two rules generally used in determining which of two insurance companies is liable in second injury cases. One rule, frequently referred to as the Massachusetts-Michigan rule, *see generally,* 4 Larson, Workmen's Compensation Law §§ 95.12 and 95.31 (1980), is that the second insurer is liable if the second injury contributed even slightly to the cause of the disability. *Rock's Case,* 323 Mass. 428, 82 N.E.2d 616 (1948). The other rule, known as the Florida rule, *Hanks v. Walker,* 60 N.M. 166, 288 P.2d 699 (1955), is that the insurance company covering the risk at the time of the first injury pays if the second injury is the result of the first injury from which the workman has never recovered, and is a manifestation of the continuance of that injury. *Brewer v. Pan American Airways, Inc.,* 156 Fla. 812, 24 So.2d 521 (1946). Both rules have been cited with approval in New Mexico. *See, Hanks; Perea v. Gorby,* 94 N.M. 325, 610 P.2d 212 (Ct.App. 1980); *Ponce v. Hanes L'Eggs Products, Inc.,* 91 N.M. 112, 570 P.2d 943 (Ct.App. 1977). A third alternative, used in some states, is apportionment. 4 Larson, Workmen's Compensation Law §§ 95.00 and 95.31 (1980); 16 Williamette L.Rev. 137 (1979). Apportionment has not been used in New Mexico. The Legislature has not enacted a statute allowing it * *.

We discuss: (a) the inapplicability of either the Massachusetts or Florida rule in New Mexico; (b) the reasons why the three New Mexico cases cited in the quotation provide no guide for deciding either *Powers* or this case; and (c) the New Mexico law which disposes of this issue.

(a) *Neither the Massachusetts nor Florida rule applies in New Mexico.*

We do not consider whether the characterization of the two rules is accurate or complete; we proceed on the assumption that the characterization of the rules in *Powers* is sufficient. However, *see Hanks v. Walker,* 60 N.M. 166, 288 P.2d 699 (1955), which refers to both rules with approval, but adopted neither rule.

In discussing the two rules, the parties proceed on the basis that the rules are antithetical, that only one of the rules applies in a particular jurisdiction. This is incorrect. The discussion in 4 Larson, Workmen's Compensation Law § 95.12 (1982), is that both rules are, in effect, rules of causation; depending on causation in fact, either rule could be applicable to a particular case. Thus both rules could apply in a particular jurisdiction.

New Mexico has its own rules of causation; there is no need to adopt causation rules of other jurisdictions. We need not be concerned with questions of slight causation (see characterization of the Massachusetts rule in the above quotation) or manifestations of the continuance of an injury (see characterization of the Florida rule in the above quotation).

■ Compensation is paid, under New Mexico law, for disability. See §§ 52–1–41 and 52–1–42, N.M.S.A.1978. For an accidental injury to be compensable, the disability must be a natural and direct result of the accident and where such a result is denied, causation must be established as a medical probability by expert medical testimony. Section 52–1–28, N.M.S.A.1978. This causation requirement applies to *any* claim for worker's compensation; it makes no difference whether the claim is for a first, second or successive accidental injury.

In *Reed v. Fish Engineering Corporation,* 76 N.M. 760, 418 P.2d 537 (1966), the worker suffered a low back injury in 1959. He suffered an injury in 1962 to the same area of the back. The trial court found that

plaintiff's disability at the time of trial was caused by the 1959 injury and not by the 1962 injury; the finding was affirmed because it was supported by substantial evidence. In *Ballard v. Southwest Potash Corporation*, 80 N.M. 10, 450 P.2d 448 (Ct.App. 1969), the claim against the subsequent injury fund was denied even though there was a certificate of pre-existing disability. The trial court found, on the basis of substantial evidence, that the claimant's disability resulted from the on-the-job accident and that this disability had not been increased by the pre-existing condition. *See also, Gammon v. Ebasco Corporation*, 74 N.M. 789, 399 P.2d 279 (1965).

Although compensation is paid for disability caused by an accidental injury, a frequent question has been whether the employer or insurance company should be liable for the entire disability; specifically whether liability should be diminished because of a pre-existing condition. We do not consider the Subsequent Injury Act, §§ 52–2–1 through 52–2–13, N.M.S.A.1978, because that Act is not involved in this appeal.

In *Gilbert v. E. B. Law and Son, Inc.*, 60 N.M. 101, 287 P.2d 992 (1955), defendants claimed "that where death results by aggravation of pre-existing disease which would inevitably have produced death, compensation cannot be recovered except for the period of time deceased would have lived absent the aggravation to the pre-existing disease." This contention was rejected, *Gilbert* held: "Although a workman may be more readily susceptible to injury than other workmen similarly employed, by reason of a pre-existing physical condition, the question whether the injury [here, the death] is compensable is not affected thereby." In *Seay v. Lea County Sand and Gravel Company*, 60 N.M. 399, 292 P.2d 93 (1956), the pre-existing condition resulted from back injuries suffered in the military service and in private employment. The employer was liable for disability resulting from aggravation of the pre-existing condition.

In *Reynolds v. Ruidoso Racing Association, Inc.*, 69 N.M. 248, 365 P.2d 671 (1961), the worker's pre-existing condition was osteoporosis. The worker suffered a compression fracture of a thoracic vertebrae in an accident. The trial court did not find that the pre-existing condition was aggravated in the accident. Although totally disabled, the trial court found that the worker suffered only 10 percent disability in the accident. The Supreme Court reversed the 10 percent award and directed entry of judgment awarding 100 percent disability. The opinion states:

> We are of the opinion that where there is a direct relationship or causal connection between the accidental injury and the resulting disability the employee is entitled to compensation to the full extent of the disability even though attributable in part to a pre-existing condition, notwithstanding acceleration or aggravation may be absent. It must be clear that there must be some causal connection—not a case where a man is suffering from a compensable injury to an arm and is then struck by a car while crossing the street, or comparable situations where there is no connection or relation between separate disabling illnesses and injuries. But, where, as here, the injury is to a bone, and the disease being suffered is to the bones, and the total disability results from the concurrence of the two factors, the right to compensation for the resultant condition cannot be successfully questioned. . . .

*See Shannon v. Sandia Corporation*, 79 N.M. 634, 447 P.2d 514 (1968).

Plaintiff had a pre-existing condition when the second accident occurred in December, 1979; the pre-existing condition was the disability caused by the accidental injury in October, 1976. Under the above New Mexico decisions, disability resulting from the second accident, regardless of the pre-existing condition, is compensable by the employer and compensation insurer at the time of the second accident. A Massachusetts rule is not needed to reach such a result.

Because a portion of plaintiff's disability was caused by the second accident, the Florida rule is not applicable to the facts of this case. However, that rule is also unnecessary to resolve a change in a worker's disability when the disability has not been increased by a later accident. As stated in *Linton v. Mauer-Neuer Meat Packers*, 71 N.M. 305, 378 P.2d 126 (1963):

> [E]ven though an accident causes a disability which results in payment of compensation for a time, the employer is not necessarily relieved of the further duty to pay compensation for a subsequent disability, which is the "natural and direct result" of the same accident.

See § 52–1–56(A), N.M.S.A.1978; *Glover v. Sherman Power Tongs*, 94 N.M. 587, 613 P.2d 729 (Ct.App.1980). *Compare, Tafoya v. Leonard Tire Co., Inc.*, 94 N.M. 716, 616 P.2d 429 (Ct.App.1980).

(b) *Three New Mexico cases cited in Powers v. Riccobene Masonry Const., Inc., supra, provide no decisional guidance.*

1. In *Hanks v. Walker, supra*, the employer sought to avoid liability on the basis that the worker's current disability did not result from an accidental injury during employment with the defendant-employer, but from either a subsequent accident or other causes. In deciding that the evidence was insufficient to sustain this defense theory, the opinion refers to both the Massachusetts and Florida rules with approval. *Hanks* was decided in 1955, the same year as *Gilbert v. E. B. Law and Sons, Inc., supra*, but after *Gilbert* had been decided. One of the instructions refused in *Hanks* refers to the "aggravation" concept decided in *Gilbert*, yet *Hanks* does not mention *Gilbert*. Thus *Hanks* gives no indication of how, or even whether the Supreme Court, in 1955, considered the relationship between *Gilbert* and the Massachusetts rule.

Under either *Gilbert* or the Massachusetts rule, the employer could be liable for the disability resulting from the latest compensable injury; that, however, is not the problem. The problem is whether a prior employer, liable for disability from an accidental injury, is relieved of liability by a subsequent accidental injury causing disability. *Hanks* does not address this problem. In addition, the compensation statutes applicable to the *Hanks* injury (in 1953) were silent as to this problem. Thus *Hanks* provides no decisional guidance.

2. In *Ponce v. Hanes L'Eggs Products, Inc.*, 91 N.M. 112, 570 P.2d 943 (Ct.App. 1977), there was one accidental injury in 1973, with disability in 1976 from that injury. Which compensation insurer was liable, the carrier at the time of the accident or the carrier at the time of the disability? Inasmuch as the complaint alleged that the 1976 disability was caused by the 1973 accident, *Ponce* upheld the trial court's dismissal of the carrier at the time of disability.

Although *Ponce* reached the correct result, its reasoning contains two errors.

The first error is in the following: [T]he rule in New Mexico is that to hold the second insurer liable, it is necessary to show a causal connection between the work done during the period of the new policy * * * [the carrier at the time of disability] and the injury or disability. The dissent in *Ponce* correctly points out that compensation is paid, in New Mexico, for disability resulting from an accidental injury. A causal connection between work done and an injury is insufficient; an accident is required. Unless an accidental injury resulting in disability occurred during the time the second compensation carrier insured the employer, the second carrier had no compensation liability.

The second error in *Ponce* is in approving the statement in *Larson, supra*, § 95.00, that where disability results from a second accidental injury, the compensation carrier " 'is usually liable for the entire compensation . . . .' " The problem comes from the word "entire". At the time of the injury in *Ponce*, there were statutory provisions which limited liability for disability resulting from a second or successive accident. *Ponce* provides no decisional guidance because it fails to consider applicable statutory provisions. We discuss those provisions under part (c) of this issue.

3. In *Perea v. Gorby*, 94 N.M. 325, 610 P.2d 212 (Ct.App.1980), the worker suffered a disabling accidental injury to his back in March, 1977 while working for the defendant-employer. In May, 1978, the worker suffered intense pain in his back while at work for a subsequent employer. The trial court found that the worker's total disability resulted from the March, 1977 accident; it did not find an accident in May, 1978.

*Perea* (a one-judge opinion and thus not a decision of the Court of Appeals, *Casias v. Zia Co.*, 94 N.M. 723, 616 P.2d 436 (Ct.App. 1980)), discussed defendant's contention, that as a matter of law the worker had a duty to seek compensation "solely" from the subsequent employer "because his preexistent injury was aggravated during his employment with this company." *Perea* correctly states that the worker was not required to seek relief from the subsequent employer as a *matter of law.* Although this result was reached by a discussion of the inapplicable Massachusetts and Florida rules, the discussion recognizes that the question of liability depends upon the facts as to accident, disability and causation. *Perea* does not discuss and, thus, provides no guidance on the question for decision in this case, which is whether an employer or insurer liable for a first disability is relieved of liability by a disability resulting from a subsequent accidental injury.

Although not involved in the issues in this case, we caution that there is an incorrect statement of law in *Perea*, and that a characterization of *Perea* is ambiguous.

■ The incorrect statement of law is that by voluntary payment of compensation "defendants admit that the disability was a natural and direct result of the accident." *See also, Medrano v. Ray Willis Const. Co.*, 96 N.M. 643, 633 P.2d 1241 (Ct.App.1981). *Wilson v. Richardson Ford Sales, Inc.*, 97 N.M. 226, 638 P.2d 1071 (1981), states:

Wilson seeks to have this Court hold that voluntary payment of workmen's compensation benefits, *ipso facto*, creates a presumption that the employer is liable. *Michael* [*v. Bauman*, 76 N.M. 225, 413 P.2d 888 (1966)] does not go that far.

Voluntary payment is only one factor to be considered with other evidence. To impose the presumption would not only be contrary to the remedial nature of workmen's compensation but would also discourage prompt payment of benefits which might be essential for the worker's survival. *Romero v. S. S. Kresge Co.*, 95 N.M. 484, 623 P.2d 998 (Ct.App.), *cert. denied*, 95 N.M. 593, 624 P.2d 535 (1981) * * *.

*Michael v. Bauman, supra; see Southern Union, Etc. v. Wynn Exploration*, 95 N.M. 594, 624 P.2d 536 (Ct.App.1981) and cases cited therein.

■ The ambiguous characterization of *Perea* is in the dissent to *Powers v. Riccobene Masonry Const., Inc., supra*. The dissent states: "Under *Perea*, aggravation of a preexistent back injury is not a second accidental injury." Aggravation of a preexistent back injury may or may not be a second accidental injury; it depends on the facts. *Seay v. Lea County Sand and Gravel Company, supra.*

(c) *New Mexico law.*

■ *Reynolds v. Ruidoso Racing Association, Inc., supra*, held that where there was a disability caused by an accidental injury "the employee is entitled to compensation to the full extent of the disability even though attributable in part to a pre-existing condition * * *." However, before the employer is liable to the full extent of the disability, "there must be some causal connection—not a case * * * where there is no connection or relation between separate disabling illnesses and injuries."

Pursuant to *Reynolds*, if there were two unrelated disabling injuries, such as an injury to an arm and an injury to a leg, the employer or compensation carrier at the time of the second accidental injury would not be liable to the full extent of the disability. Rather, a separate disability would be determined for each accidental injury and the employer and compensation carrier at the time of each accident would be liable for disability resulting from that accident.

*Compare Montoya v. Sanchez,* 79 N.M. 564, 446 P.2d 212 (1968). In unrelated disabling accidental injury situations, the disablements could exceed 100 percent disability.

When, however, there is a causal connection between a disabling accidental injury and a pre-existing condition so that the employer is liable to the full extent of the disability, what is the effect of "full extent" liability on any liability for the pre-existing condition? Suppose a worker suffers an accidental injury resulting in a 50 percent partial disability and compensation benefits are paid on the basis of that disability. A subsequent accidental injury results in a 100 percent disability. The subsequent accidental injury aggravated the pre-existing condition and caused disability thereby meeting the causal connection or relation requirement between separate disabling injuries. Under *Reynolds,* the employer and compensation carrier for the subsequent accident are liable for the 100 percent disability. *Reynolds,* however, did not state what happened to the liability of the employer and compensation carrier for the pre-existing 50 percent disability; under the facts of *Reynolds,* there was no issue as to this.

The Legislature enacted limitations on liability which apply to the above situations. The law enacted in 1957 provided limitations on liability. See Laws 1957, ch. 246, § 19. The 1957 law was held unconstitutional in *State v. Mechem,* 63 N.M. 250, 316 P.2d 1069 (1957). Another compensation law was enacted in 1959. Laws 1959, ch. 67, § 26, provided for limitations on liability. The limitation provisions have been frequently amended. The applicable limitation provisions are compiled as § 52–1–47, N.M.S.A.1978.

Section 52–1–47(A) and (B) provide limitations on the length and amount of benefits payable for a combination of disabilities; these provisions would be applicable where combined disabilities exceed 100 percent. These provisions were not considered in *Maes v. John C. Cornell, Inc.,* 86 N.M. 393, 524 P.2d 1009 (Ct.App.1974).

Section 52–1–47(D) is pertinent to this case. It reads:

D. the compensation benefits payable by reason of disability caused by accidental injury shall be reduced by the compensation benefits paid or payable on account of any prior injury suffered by the workman if compensation benefits in both instances are for injury to the same member or function, or different parts of the same member or function, or for disfigurement, and if the compensation benefits payable on account of the subsequent injury would, in whole or in part, duplicate the benefits paid or payable on account of such prior injury.

We emphasize that the statute provides for a *reduction* in benefits payable for a second disability resulting from an accidental injury to the extent of benefits *paid or payable* for a disability resulting from a prior accidental injury if other requirements of the statute are met. *Maes v. John C. Cornell, Inc., supra,* and *Reed v. Fish Engineering Corporation, supra,* held that the reduction provides no benefit to the employer or compensation carrier liable for the first, or prior, disability. Section 52–1–47(D), *Maes* and *Reed* negate the view expressed in *Ponce v. Hanes L'Eggs Products, Inc., supra,* and the holding in *Powers v. Riccobene Masonry Const., Inc., supra,* that the employer and compensation carrier at the time of the second accident are liable for the "entire" disability resulting from the second accidental injury.

■ The employer and compensation carrier at the time of the first accidental injury remain liable for compensation benefits payable for disability resulting therefrom. The employer and compensation carrier at the time of the second accidental injury are initially liable for disability resulting from the second accidental injury, to the full extent of the disability. Liability for disability resulting from the second accidental injury is reduced to the extent of benefits paid or payable for disability resulting from the first accidental injury if the requirements of § 52–1–47(D) are met. Even if these requirements are not met, the limitations in § 52–1–47(A) and (B) apply. There

is no issue in this case as to the application of § 52–1–47(A) and (B).

■ Section 52–1–47(D) applies because the uncontradicted medical testimony is that the December, 1979 accidental injury was a stretching or tearing of scar tissue at the site of the operation performed in connection with the accidental injury in October, 1976; thus, the second injury was to the same member or function or to a different part of the same member or function. Compensation benefits for a 55 percent partial disability after the second accidental injury would duplicate benefits paid or payable for disability after the first accidental injury. The facts stated in *Powers v. Riccobene Masonry Const., Inc., supra,* indicate that § 52–1–47(D) applied in that case; *Powers* was incorrectly decided.

The question of the amount of the reduction in benefits to be paid for the disability from the second accidental injury is complicated by differences in the average weekly wage on which the benefits are reckoned. The wage rate used in connection with the first accident is higher than the wage rate used in connection with the second accident; however, the wage rate is not an issue. *Gurule v. Albuquerque-Bernalillo Co. Economic Op. Bd.,* 84 N.M. 196, 500 P.2d 1319 (Ct.App.1972), states: "[B]enefits for the subsequent injury may not duplicate benefits paid or payable for the prior injury. It is the overlap in benefits to which the reduction applies."

Mountain States is liable to pay 55 percent partial disability benefits on the basis of the wage rate applicable to the December, 1979 accident. North River is liable to pay 45 percent partial disability benefits on the basis of the wage rate applicable to the October, 1976 accident. Mountain States' liability is reduced to the extent of compensation benefits paid or payable by North River. Because the wage rate applicable to North River is higher than that of Mountain States, Mountain States' liability will be less than 10 percent of the wage rate applicable to Mountain States.

*Liability of Each Insurance Company to Pay Attorney Fees and Costs*

The trial court awarded $9,500.00 to plaintiff for the services of his attorney, and prorated the award. The proration used as a denominator the sum of $38,000.00, calculated as the present value of the compensation award. The numerator, for each insurance company, was the amount owing by each insurance company. The fraction thus formed was multiplied by $9,500.00 to determine how much of the $9,500.00 each insurance company was to pay. The same method of proration was used for the court costs.

There is no challenge to the amount of the attorney fees or to the method of proration. Mountain States contends that it was error to prorate the attorney fees and costs; that liability for these items should have been joint and several, with the result, according to Mountain States (presumably under a theory of contribution), that liability for these items would be borne equally.

■ If specific guidance is lacking in the statute, then fundamental fairness to the parties is the guideline. *Anaya v. New Mexico Steel Erectors, Inc., supra.* There is no specific guidance in the statute concerning the respective liability of two insurance carriers, under the facts of the case, for attorney fees and costs. A fundamental fairness approach was used in *Transport Indemnity Company v. Garcia,* 89 N.M. 342, 552 P.2d 473 (Ct.App.1976), in apportioning the costs of third-party litigation between the worker and the compensation carrier seeking reimbursement of compensation paid to the worker.

■ Apportionment of attorney fees and costs on the basis of the liability of each insurance company to pay compensation benefits accords with the concept of fundamental fairness; apportioning liability for attorney fees and costs was not error. The precise amount must be adjusted, upon remand, to reflect the liability of each insurance company for compensation benefits.

The portion of the judgment stating the liability of North River and Mountain

States to pay compensation benefits, attorney fees and costs is reversed; the remainder of the judgment is affirmed. The cause is remanded with instructions to enter an amended judgment as to the liability of the insurance companies for compensation benefits, attorney fees and costs consistent with this opinion.

Plaintiff, having successfully defended the 55 percent partial disability award against the attack of Mountain States, is awarded attorney fees for the services of his attorney on appeal in the amount of $1,500.00, to be paid by Mountain States.

North River is to pay one-half of the appellate costs of Mountain States.

IT IS SO ORDERED.

HENDLEY, J., concurs.

SUTIN, J., specially concurs.

SUTIN, Judge (specially concurring).

I specially concur.

The opinion states:

The reasoning by which the result was reached in *Powers* [*Powers v. Riccobene Masonry Const., Inc.*, 97 N.M. 20, 636 P.2d 291 (Ct.App.1980)] is an aberration; the reasoning departs from both judicial decisions and the statutory law of New Mexico.

It also states:

* * * *Powers* was incorrectly decided.

In *Powers*, certiorari was granted and then quashed. *Powers* does not represent the views of the Supreme Court.

"A denial of certiorari imports nothing as to the merits of the case. All it means is that, for whatever reasons, there were not four members of the Court who wished to consider the issues presented for review." *Howell v. Jones*, 516 F.2d 53, 56 (5th Cir. 1975); *State v. Jacques*, 99 N.J.Super. 230, 239 A.2d 252 (1968); *Beezer v. City of Seattle*, 62 Wash.2d 569, 383 P.2d 895 (1963).

*Brown v. State*, 294 Ala. 241, 314 So.2d 721 (1975), omitting citations, said:

By denying the writ, we point out that writs of certiorari are frequently denied without any consideration of the merits. A denial of certiorari should never be considered as an expression by the reviewing court on the merits of the controversy. Our denial of the writ should not be understood as approving or disapproving the language used, or the statements of law contained in the opinion of the Court of Criminal Appeals.

In denying a writ, a comment can be made. *Wright v. State*, 294 Ala. 99, 312 So.2d 421 (1975). A denial "cannot be used as precedent or authority for or against the propositions raised by either of the proceedings." *State v. Edwards*, 135 So.2d 889, 890–891 (Fla.1961). Neither is it tantamount to an affirmance of the Appellate Division on the merits, *West Point Island Civic Ass'n v. Township Committee*, 54 N.J. 339, 255 A.2d 237 (1969), nor an approval either of the result reached by the Appellate Division or of the opinion rendered by it. *State v. Chisholm*, 155 Conn. 706, 236 A.2d 465 (1967).

These rules variously stated are uniform. Heretofore, courts and lawyers have cited and referred to denials of certiorari with the belief that the opinion of the Court of Appeals was clothed with finality. It is not. The opinion is subject to being overruled, modified or amended by the Court of Appeals. The opinion is clothed with finality when it is affirmed, cited or quoted favorably by the Supreme Court. Having dissented in *Powers*, I agree that it was incorrectly decided.

The opinion remands the case with instructions to amend the judgment consistent with the opinion. To attempt to conform with these instructions may prove confusing. When an amended judgment is ordered entered, this Court should set forth the precise amendments to be made. If any substantive disagreements arise, clarification in this Court may be requested.

I think the opinion holds that North River shall pay 45% of the partial permanent disability benefits for the full term of 600 weeks and Mountain States shall pay 10% of the partial permanent disability benefits for the full term. However, the opinion states that:

The wage rate used in connection with the first accident is higher than the wage rate used in connection with the second accident; however, the wage rate is not an issue.

Later, the opinion states:

Because the wage rate applicable to North River is higher than that of Mountain States, Mountain States' liability will be less than 10 percent of the wage rate applicable to Mountain States.

Inasmuch as this matter appears to be clear and unambigious to my colleagues, no further comment is necessary.