781 P.2d 322

**Anthony CANO, Plaintiff–Appellee,**

v.

**SMITH'S FOOD KING,
Defendant–Appellee,**

v.

**Fabian CHAVEZ, State Superintendent of Insurance, the New Mexico Subsequent Injury Fund, and Vicente Jasso, Defendants–Appellants.**

**No. 10863.**

Court of Appeals of New Mexico.

Sept. 26, 1989.

David H. Pearlman, David H. Pearlman, P.A., Albuquerque, for plaintiff-appellee.

Robert A. Martin, Bradley & McCulloch, P.A., Albuquerque, for defendant-appellee Smith's Food King.

Nathan H. Mann, M. Clea Gutterson, Gallagher, Casados & Mann, P.C., Albuquerque, for defendants-appellants New Mexico Subsequent Injury Fund and Vicente Jasso.

## OPINION

BIVINS, Chief Judge.

Defendant Subsequent Injury Fund (the Fund) appeals the district court's judgment assigning it 100% liability for worker's disability. It raises four issues: (1) whether sufficient evidence exists to establish liability against the Fund; (2) whether the district court erred in holding the Fund 100% responsible; (3) whether defendants are entitled to credit on amount of prior settlement; and (4) whether the district court properly allowed interest on the judgment. We reverse and remand.

The accidental injury giving rise to this claim occurred on July 12, 1986, when worker, while pulling a rack of meat trays from a meat locker, tripped over a milk crate, causing him to fall backward onto his buttocks. Worker had suffered three previous accidental injuries to the same area of his body while working for the same employer. The first occurred in 1981, causing worker to miss eight weeks of work; the second in 1983, causing him to miss fifteen weeks. On February 12, 1985, worker suffered the third accidental injury, for which he was paid benefits of $14,-632.87, plus $20,000 in full settlement of all future compensation benefits. In addition, worker received open medical benefits for one year until May 30, 1987. Worker had been released to return to light duty approximately four months prior to the accidental injury giving rise to this claim.

Relevant to the issues raised on appeal, the district court found worker totally disabled and assigned 100% of that disability to the Fund. It also refused to allow any credit for the prior settlement and ordered interest to accrue from the date of an earlier judgment that was later set aside and vacated.

Since this case was tried before the district court, we apply the traditional standard for determining the sufficiency of the evidence as set forth in *Sanchez v. Homestake Mining Co.*, 102 N.M. 473, 697 P.2d 156 (Ct.App.1985). *Cf. Tallman v. ABF (Arkansas Best Freight)*, 108 N.M. 124, 767 P.2d 363 (Ct.App.1988) (applying whole record review for cases tried before the Workers' Compensation Division).

### I. *Substantial Evidence of Fund Liability*

■ The Fund correctly points out that it is not liable unless worker's disability is materially and substantially greater than that which would have resulted from the July 12, 1986 accident alone. NMSA 1978, § 52–2–9 (Orig.Pamp.); *Ballard v. Southwest Potash Corp.*, 80 N.M. 10, 450 P.2d 448 (Ct.App.1969). This is essentially a medical causation question that ordinarily must be established by expert medical testimony. *See Cervantes v. Forbis*, 73 N.M. 445, 389 P.2d 210 (1964), *modified on other grounds, Pharmaseal Laboratories, Inc. v. Goffe*, 90 N.M. 753, 568 P.2d 589 (1977). The Fund cites to testimony given by Dr. McCutcheon that the subsequent injury of July 12, 1986 was sufficient alone to produce all of worker's symptoms. The Fund states, "There was no testimony by Dr. Schultz on this issue."

The Fund concedes Dr. Schultz testified that the July 12, 1986 accidental injury aggravated worker's preexisting condition, but claims this physician "never testified whether Cano's condition was materially and substantially greater than it would have been as a result of the second injury alone." We do not so read Dr. Schultz's deposition testimony.

Dr. Schultz answered "yes" to a hypothetical question as to whether the accidental injury of July 12, 1986 aggravated the preexisting condition to some percentage extent of permanent impairment that was greater than the impairment that existed prior to that accidental injury. His subsequent testimony is even clearer.

Dr. Schultz, when asked to assume a preexisting impairment of 10%, said that to a reasonable medical probability the accidental injury of July 12, 1986 aggravated that condition and resulted in an increased percentage of permanent impairment. He assessed that increase at about 20–25% impairment, an increase of 10–15% over what it was before. Dr. Schultz also said that, without the July 12, 1986 accidental injury, worker's preexisting physical impairment would have continued. The 1986 accidental injury increased the symptoms. We believe this testimony would permit the trier of fact to infer that worker's disability is materially and substantially greater than that which would have resulted from the July 12, 1986 accidental injury alone. But there was direct testimony on the subject.

The Fund's counsel asked the following question and got the following answer:

Q Do you have an opinion as to whether that fall could have resulted in his entire injuries and symptomatology just by itself, without having had a preexisting problem?

A No way. Because in my report I stated that if you review this man's history you could see what was happening with him. His first injury resolved in eight weeks. His second injury resolved in 15 weeks. And the third injury resulted in the first episode of lower extremity pain on the left side. So you can see what is happening each time this guy gets hurt. He is producing a little more pathology at that disc level.

Finally the one on July 12 is the one that puts him on the operating table. This is a process of attrition, like fraying a hemp rope. At some point that rope is going to fray enough to where you give it a sudden jerk and it is going to part.

This testimony from Dr. Schultz provides substantial evidence to support a finding that the Fund is liable.

## II. *Finding of 100% Fund Liability*

■ Based on findings that the accidental injury of July 12, 1986 was not in and of itself sufficient to cause the extent of physical impairment and disability suffered by worker, the district court concluded that the Fund was responsible for all benefits due worker. The Fund challenges these findings and conclusions. We agree.

The district court could assign 100% of the liability to the Fund only if it found that the preexisting injury alone caused 100% of the disability and that the subsequent injury caused none. The district court made no such findings, and the findings that it did make directly contradict such a conclusion.

The court found that worker's surgery was probably necessary only because of the July 12, 1986 injury; that worker's permanent, partial impairment of 20–25% was a direct and proximate consequence of the July 12 injury; and that worker's inability to return to work as a meat cutter was causally connected to the July 12 injury. It thus appears that the court assigned some, if not most, responsibility for worker's total disability to the July 12, 1986 injury. The court did not make a finding that 100% of the disability was caused solely by the preexisting condition. In the absence of such a finding, the trial court erred by assigning all liability to the Fund.

## III. *Credit for Lump Sum Settlement*

■ The Fund argues that any benefits due worker must be reduced by the previous settlement made three months before the accidental injury of July 12, 1986. In making this argument, it relies on NMSA 1978, Section 52-1-47(D) (Orig.Pamp.). Employer joins in this argument and agrees there should be a reduction. Worker did not file any brief in opposition.

The trial court's finding of fact No. 12 indicates that the $20,000 paid to worker was a settlement only of his future weekly compensation benefits. Worker's attorney was not paid out of that fund, nor were future medical expenses included. Therefore, it is possible to calculate the number of weeks of benefits the $20,000 covers. Finding No. 12 also indicates that the $20,000 should cover all weekly compensation benefits coming due after February 19, 1986. We adopt the Fund's method of determining worker's weekly benefit level,

dividing $14,632.87 (total weekly benefits paid) by 53 (number of weeks for which benefits were paid, up to February 19). This yields a benefit level of $276.09. The $20,000 settlement must then be divided by the weekly rate to arrive at a figure for the number of weeks covered by the settlement. *See Gurule v. Albuquerque–Bernalillo County Economic Opportunity Bd.*, 84 N.M. 196, 500 P.2d 1319 (Ct.App. 1972). That figure is 72.44, which means that the $20,000 equaled 72.44 weeks of compensation. We must determine whether any of these weeks overlap with the benefits paid or payable as a result of the subsequent injury. *See id.*

Worker was injured on July 12, 1986. However, he continued working after the injury until forced to halt because of his injury. The court found worker disabled *beginning November 13, 1986,* and awarded benefits beginning on that date. Therefore, worker's settlement benefits did not begin to overlap on the date of his injury, as the Fund claims, but on the date benefits for that injury were first payable, or November 13. The period from February 19, 1986 to November 13, 1986 encompasses thirty-eight weeks and one day, or 38.14 weeks. Subtracting that figure from 72.44 provides a result of 34.3. Therefore, worker still had 34.3 weeks of compensation remaining from his settlement at the time he became eligible for more compensation as a result of the subsequent injury. 34.3 multiplied by worker's weekly compensation rate, $276.09, yields $9,469.89. On remand, employer and the Fund should be given credit for that amount, in the proportions for which they are found liable for worker's disability.

## IV. *Interest*

■ The district court awarded prejudgment interest. It could have done so only under NMSA 1978, Section 56–8–4(B) (Repl. 1986); however, as the Fund points out, there is no indication that the court considered the necessary factors to award prejudgment interest under that statute. Accordingly, it appears that the district court considered its award to be postjudgment as opposed to prejudgment interest. We base

this on the judgment, which allowed interest to accrue from January 7, 1988, the date of the original judgment, as opposed to July 8, 1988, the date final judgment was entered.

■ The January judgment and a February amended judgment, however, were vacated and set aside on February 25, 1988. Thus, the earlier judgments were rendered void and of no effect. The subsequent judgment in July could not have merely modified the earlier judgments, because they no longer existed at the time the July judgment was entered. Therefore, this case is unlike *Varney v. Taylor*, 81 N.M. 87, 463 P.2d 511 (1969), or *Genuine Parts Co. v. Garcia*, 92 N.M. 57, 582 P.2d 1270 (1978), in which valid district court judgments were in effect during the pendency of appeals. Postjudgment interest should properly accrue only after judgment has been entered.

## Conclusion

Based on the foregoing, we reverse and remand this case to the district court with instructions to determine the proportions in which the preexisting condition and the subsequent injury contributed toward worker's disability. The district court shall then apportion liability between the Fund and employer in accordance with those proportions, assigning liability to the Fund only to the extent that the preexisting condition, not the subsequent injury, contributed to the disability. In addition, the trial court shall grant the Fund and employer credit in the amount of $9,469.89, apportioned in accordance with their liability, to prevent overlap in benefits between the lump sum settlement and the benefits awarded as a result of the subsequent injury. Finally, the trial court may allow postjudgment interest on any lump sums due worker only from the date of judgment in this case.

IT IS SO ORDERED.

MINZNER and CHAVEZ, JJ., concur.