817 P.2d 1238

Ricky L. GARCIA, Claimant-Appellee,

v.

MORA PAINTING & DECORATING and Mountain States Mutual Casualty Company, Respondents-Appellants,

and

Advanced Painting Specialists and USF & G, Respondents-Appellees.

No. 12060.

Court of Appeals of New Mexico.

May 23, 1991.

Donald E. Martinez, Fine & Faure, P.A., Albuquerque, for claimant-appellee.

Ann M. Maloney, Padilla, Riley & Shane, P.A., Albuquerque, for respondents-appellants.

Robert Bruce Collins, Albuquerque, for respondents-appellees.

## OPINION

MINZNER, Judge.

This is an appeal from a decision of the Workers' Compensation Administration (administration). Ricky L. Garcia (worker) filed claims against his former employer, Mora Painting & Decorating (previous employer) and against the company that employed him at the time of his second accident, Advanced Painting Specialists (subsequent employer). The workers' compensation judge (judge), after finding worker to be temporarily totally disabled, apportioned liability between previous employer and subsequent employer. Previous employer has appealed, contending that the judge did not have authority to apportion liability between the two employers and that any liability previous employer might have had is barred by worker's failure to file a timely claim. *See* NMSA 1978, § 52-1-31(A) (Repl.Pamp.1987).

Previous employer has argued on appeal that the judge erroneously apportioned liability under NMSA 1978, Section 52-1-47(D) (Repl.Pamp.1987). Subsequent employer defends the apportionment as consistent with this court's decision in *Urioste v. Sideris*, 107 N.M. 733, 764 P.2d 504 (Ct.App.1988) and *Gonzales v. Stanke-Brown & Associates, Inc.*, 98 N.M. 379, 648 P.2d 1192 (Ct.App.1982). The evidence in this case established a compensable disability, of which the second accident was the proximate cause, and therefore that subsequent employer was initially liable for all compensation awarded worker. *See* § 52-1-47(D); *Gonzales v. Stanke-Brown & Assocs.* Subsequent employer, however, failed to establish that the benefits for which it was liable would duplicate benefits paid or payable on account of the first injury. We conclude that Section 52-1-47(D) is not applicable to subsequent employer's liability for temporary total disability on these facts. *Id. Urioste* is not controlling, because it is factually distinguishable. In view of our disposition, we do not address previous employer's second issue. We reverse and remand with instructions to enter judgment for worker against subsequent employer as to the total temporary disability award and to proceed to determine the degree of permanent impairment and disability.

FACTS AND PROCEDURAL BACK-GROUND.

On April 2, 1986, while working in the course and scope of his employment as a commercial painter with previous employer, worker fell and injured his back. He missed a little over a month of work. Previous employer paid him disability benefits and reimbursed him for his medical expenses.

When worker's treating physician released him to return to work, previous employer had no job for him. He found a job with another employer, who is not a party to this appeal. He disclosed his work limitations to that employer, who allowed him to delegate some of his duties. Although experiencing pain, worker was able to complete the tasks assigned to him.

During this time, worker's physician referred him to an orthopedic specialist, Dr. Thorpe. On July 8, 1987, Dr. Thorpe diagnosed worker as suffering from a herniated L5–S1 disc.

At the hearing before the administration, Dr. Thorpe testified by deposition that a lumbar CT scan on June 23, 1987, revealed a small left-sided disc herniation at the L5–S1 level. He also testified that the herniation that existed on June 23 was causally related to a reasonable medical probability to the April 2, 1986 accident. It is undisputed that worker had continuing pain, but that he was tolerating it sufficiently to work. In August, 1987, Dr. Thorpe again saw worker. At that time, Dr. Thorpe found a very tender focus of pain in the lower back, which he injected with steroids. When Dr. Thorpe saw worker again in December, 1987, he was stable. Dr. Thorpe testified that worker's prognosis for recovery was good at this time. He did not recommend that worker stop working or limit his work activities, but at the hearing he testified that if worker's pain had escalated, he would have directed him to stop working. Worker wore a device to alleviate pain (a "TNS" unit).

During the fall of 1987, worker consulted with an attorney concerning his right to compensation benefits from previous employer. In December, previous employer refused to pay any benefits, except medical expenses, because there was no medical evidence that worker was unable to work. Worker's attorney told him of this decision soon after it was made.

Worker left his second employer for reasons unrelated to his back problem. He began work with subsequent employer in January 1989. On January 26, 1989, worker moved a five-gallon can of paint. When he stood up, he immediately had severe pain in his low back.

Doctor Thorpe saw worker again in February, 1989, after the second accident. At that time, worker was suffering pain similar to the pain he experienced in 1987. There are indications in the record that it had continued since that time, but that worker had tolerated the pain and had been reluctant to seek further medical treatment because of concerns that the cost would not be covered by insurance. Dr. Thorpe now ordered worker to stop working.

Dr. Thorpe testified that at this time worker was experiencing increased pain, as well as new pain in an extremity, and that the cause of both was a displaced intervertebral disc, or herniated disc, at L5–S1 on the left. Dr. Thorpe testified to a reasonable medical probability that the changes he observed were the result of the 1989 accident. He also testified that worker became unable to work as a painter as a result of that accident.

During his deposition, Dr. Thorpe was asked if he could allocate a percentage of contribution of the events of April 1986 and January 1989 to the present condition and symptoms. He answered as follows:

It's my belief that the herniation became symptomatic or actually occurred as a result of the incident in 1987 [1] and that there was an aggravation of that condition as a result of the occurrence in 1989. And I believe that I can allocate a reasonable and probable 80 percent to the

incident of '87 [1] and 20 percent to that of '89.

Dr. Thorpe testified that he did not have enough information in 1987 to give an impairment rating and that claimant had not recovered sufficiently to give one in 1989 or at the time of the hearing. Thus, he testified, he was not able to say to a reasonable medical probability that worker had any greater permanent impairment than he had had in 1987. However, he was clear that at least temporarily worker had an additional impairment and that he was unable to work as a result of the 1989 accident.

The judge found that as a direct and proximate result of the 1986 accident, to a reasonable medical probability, worker suffered an injury to the low back, a herniation at spine level L5–S1, and that as a direct and proximate result of the 1989 accident, to a reasonable medical probability, worker suffered an aggravation of the herniation. He also found that worker was temporarily totally disabled from April 23, 1986 to June 3, 1986, was not disabled after that until 1989, and was temporarily totally disabled from January 26, 1989 until further order. Finally, the judge also found that claimant's disability began on April 2, 1986, and that the disability and impairment were the direct and proximate result, to a reasonable medical probability, of both accidents. The judge concluded that the statute of limitations did not bar worker's claim against previous employer and apportioned benefits and medical expenses eighty percent to previous employer and twenty percent to subsequent employer. He apportioned attorney fees sixty percent to previous employer, fifteen percent to subsequent employer, and twenty-five percent to worker. *See* NMSA 1978, § 52–1–54(H) (Cum.Supp.1990).

DISCUSSION.

Section 52–1–47(D) provides that:

[T]he compensation benefits payable by reason of disability caused by accidental injury shall be reduced by the compensation benefits paid or payable on account of any prior injury suffered by the worker if compensation benefits in both instances are for injury to the same member or function or different parts of the same member or function ... and if the compensation benefits payable on account of the subsequent injury would, in whole or in part, duplicate the benefits paid or payable on account of such prior injury.

■ Our cases clearly establish that Section 52–1–47(D) applies to prevent a double recovery. It prevents a double recovery by providing a credit against the liability of a subsequent employer for sums due from a prior employer. *See Gonzales v. Stanke–Brown & Assocs.* We first discuss the analysis in *Gonzales,* then distinguish *Urioste,* and finally discuss the questions to be resolved on remand.

## THE ANALYSIS UNDER SECTION 52–1–47(D) CONTAINED IN GONZALES.

In *Gonzales,* the worker was injured in 1976 and again in 1979. At the time of both injuries, he was working for Stanke–Brown. However, Stanke–Brown had a different insurance company in 1979 than it had in 1976. The court stated that the case was conceptually the same as if the worker had been working for a different employer at the time of the second injury than he had been at the time of the first injury. *Id.* at 381, 648 P.2d at 1194. The court ruled that while the second insurer was "initially" liable for the entire disability, its liability was reduced to the extent that it "overlapped" with the liability of the first insurer, that is, to the extent that the disability was caused by the first injury. *Id.*

In *Gonzales,* this court noted that there must be a causal connection between a disabling accidental injury and a preexisting condition in order for the employer at the time of the disabling injury to be liable initially for the entire disability. The court

---

**1.** In context, it is apparent the doctor meant to refer to the first accident in 1986.

discussed *Reynolds v. Ruidoso Racing Association*, 69 N.M. 248, 365 P.2d 671 (1961), and how Section 52–1–47(D) applied to reduce benefits otherwise payable for a second disability; the court concluded that the statute should have been applied in *Powers v. Riccobene Masonry Construction, Inc.*, 97 N.M. 20, 636 P.2d 291 (Ct.App.1980). Both *Reynolds* and *Powers* involved cases in which a preexisting condition was aggravated by a subsequent work-related accident.

■ We also indicated in *Gonzales* that the question of apportionment ordinarily arises only after the determination of initial liability is made. "We emphasize that the statute provides for a *reduction* in benefits payable for a second disability resulting from an accidental injury to the extent of benefits *paid or payable* for a disability resulting from a prior accidental injury if other requirements of the statute are met." *Id.* 98 N.M. at 386, 648 P.2d at 1199 (emphasis in original). Our cases have established that the statute provides no benefit to the employer liable for the first or prior disability. *Id.* In an appropriate case, it prevents the employer and compensation carrier at the time of the second accident from being liable for the " 'entire' disability resulting from the second accidental injury." *Id.* Thus, ordinarily a threshold question under *Gonzales* is whether "entire" liability should be assigned to a second employer.[2]

Under our cases, on both the evidence presented and the judge's findings, we conclude that subsequent employer was initially liable for the entire temporary total disability. *See Gonzales v. Stanke-Brown &*

*Assocs.* However, the evidence does not support a determination that the benefits for which subsequent employer was initially liable overlap benefits for which previous employer is liable.

■ On appeal from a compensation order, the whole record standard of review applies. *Tallman v. ABF (Arkansas Best Freight),* 108 N.M. 124, 767 P.2d 363 (Ct. App.1988). Under that standard, we must consider all evidence bearing on the findings, favorable or unfavorable, to determine if there is substantial evidence to support the result.

■ Taken as a whole, the evidence in this case shows that worker suffered an injury while employed by subsequent employer that produced total disability. The evidence indicates that there was a degree of impairment prior to the 1989 accident, which was the result of a work-related accident while worker was employed by previous employer. The evidence does not show that the 1986 accident caused any specific degree of impairment in 1986 or subsequently, or that it was responsible for a specific portion of the 1989 temporary disability. Dr. Thorpe may have meant that the present disability could be analyzed as a twenty per cent impairment and an eighty percent impairment and that the 1986 accident was the proximate cause of the greater degree of impairment. He did not say that, however, and he specifically said that it was premature to discuss degrees of permanent impairment.

The present temporary total disability follows an accidental injury that occurred almost three years following the first accidental injury. After worker's injury in

---

**2.** Our cases have recognized that a disability that arises after two accidents to the same member may be causally related solely to the initial accident, *see Reed v. Fish Engineering Corp.,* 76 N.M. 760, 418 P.2d 537 (1966), and that aggravation of a preexistent back injury may or may not be a second accidental injury, because that depends on the facts. *See Gonzales v. Stanke-Brown & Assocs.,* 98 N.M. at 385, 648 P.2d at

1198. As we understand the record, here subsequent employer argued to the judge that the disability for which worker was awarded benefits was causally related solely to the initial accident, because the events in January were not a second accidental injury under New Mexico law. The judge rejected this argument, and subsequent employer has not appealed from that decision.

April, 1986, he was paid temporary total disability for a short period of time, after which he was permitted to return to work with the previous employer. As work was not available, worker then went to work for an interim employer, after which he went to work for subsequent employer and was performing his duties until January 26, 1989, when he suffered the second accidental injury, after which he was unable to work.

■ We note that the trial court found, and neither party disputes, that the present law controls the disposition of this appeal. We assume that this means the governing law appears in the 1987 Workers' Compensation Act. Under that Act, "temporary total disability" ordinarily refers to a limited time during which worker is undergoing treatment. *Compare Lane v. Levi Strauss & Co.*, 92 N.M. 504, 590 P.2d 652 (Ct.App.1979) (decided under prior law) *with Baca v. Bueno Foods*, 108 N.M. 98, 766 P.2d 1332 (Ct.App.1988) (under Interim Act, concept of temporary total disability, a period of healing and complete wage loss, is defined as the period prior to maximum medical improvement).

■ The healing period for the first accidental injury in this case had long since expired when worker suffered his second injury. Therefore, previous employer could not be liable for total disability for a healing period following the second injury. No other basis for the award of temporary total disability has been identified to us. As indicated above, the medical evidence is not sufficient to support a finding of causal connection between the first accident and the period of total disability for which benefits were awarded.

We do not hold that it is never possible for two employers to share responsibility for temporary total disability where there are successive accidental injuries. *See Urioste v. Sideris* (short interval of time between two employments and two accidental injuries). We do hold that the evidence in this case does not support such a finding.

## THE EFFECT OF URIOSTE.

We recognize that *Urioste* might be viewed as inconsistent with this conclusion. We believe *Urioste* is distinguishable.

Urioste hurt his back while working for Sideris. Shortly thereafter he went to work for Furr's. He hurt his back while erecting a sign for Furr's. The first accident occurred in mid-August; the second occurred in early October. This court affirmed an order apportioning liability for total temporary disability benefits between the two employers. "Although the employer ... at the time of the second accident [is] liable for compensation for the disability resulting from the second accident, that amount is subject to reduction to the extent of benefits paid or payable for disability resulting from the first accidental injury." *Id.*, 107 N.M. at 738, 764 P.2d at 509.

We have reviewed the briefs filed in *Urioste. See State v. Turner*, 81 N.M. 571, 576, 469 P.2d 720, 725 (Ct.App.1970) (court took judicial notice of transcript filed in prior, related case). In *Urioste*, as here, the employer at the time of the first accident claimed at trial that the disability resulted from the second accident, and therefore he was not liable for benefits. The compensation order determined that the disability resulted from both accidents and that it began after the first accident; the order apportioned liability ninety-five percent to the first employer and five percent to the second employer. As in this case, second employer did not raise any claim of error with respect to the amount of liability apportioned to it. On appeal, the first employer again argued that no disability resulted from the first accident. However, there was uncontradicted medical evidence to support a finding of a causal connection between the disability for which benefits were awarded *Urioste* and the first accident. The same cannot be said of the evidence in this case. Thus, at the appel-

late level, we think *Urioste* is distinguishable both on its facts and the issues raised.

However, we note that Judge Griego, who decided this case for the administration, also decided *Urioste.* At the trial level, this case and *Urioste* must have seemed remarkably similar. Judge Griego may have found in both cases that the evidence supported a finding of multiple causation. We do not agree that the evidence in this case supports such a finding. Further, we conclude *Urioste* does not stand for the proposition that a credit under Section 52–1–47(D) is permissible in the absence of an initial determination that the second employer is entirely liable for a degree of disability or sufficient evidence that both injuries caused the particular disability for which benefits have been awarded.

QUESTIONS TO BE RESOLVED ON REMAND.

The allocation of liability on these facts cannot stand because the evidence shows the requisite causal connection between the disabling second accidental injury and the disability for which benefits were awarded, and there is insufficient evidence to show that the benefits awarded overlap benefits for which previous employer is liable or sufficient evidence that both injuries caused the particular disability for which benefits were awarded. Therefore, we have held that the judge could not allocate liability for the temporary total disability that followed the January, 1989 accidental injury. Having so concluded, this does not end our inquiry. We next consider whether and to what extent subsequent employer may be entitled to credit under Section 52–1–47(D) on remand.

Our cases and statutes provide two means of relief for the subsequent employer. First, he can protect himself by obtaining a certificate of preexisting impairment at the time of employment and then seek an allocation under the Subsequent Injury Act. NMSA 1978, §§ 52–2–1 to –13 (Repl.

Pamp.1987). Here it is conceded that subsequent employer cannot obtain relief under the Subsequent Injury Fund because it did not file a certificate of preexisting impairment. The second means of relief is through Section 52–1–47(D), which provides a credit to the second employer who has to compensate a worker for the full extent of his or her disability by allowing a credit against that employer's liability to the extent it overlaps and duplicates benefits paid or payable as a result of the previous accidental injury.

▇ When a worker has been awarded benefits for a certain number of weeks of disability, and before that period expires he is injured again and again becomes entitled to disability benefits, those who are liable for the second injury may be entitled to a reduction on the basis of an overlap. *See Gurule v. Albuquerque–Bernalillo County Economic Opportunity Bd.,* 84 N.M. 196, 500 P.2d 1319 (Ct.App.1972). In such cases, the right to a reduction under Section 52–1–47(D) has depended on whether a subsequent employer or the Subsequent Injury Fund made a sufficient showing that specific amounts paid by a previous employer in weekly benefits or by settlement could be said to "overlap" with any amounts for which the subsequent employer would otherwise be liable. *See Munoz v. Deming Truck Terminal,* 110 N.M. 537, 797 P.2d 987 (Ct.App.1990) (showing by respondent and insurance carrier as to weeks of compensation included in settlement held insufficient to support reduction); *Cano v. Smith's Food King,* 109 N.M. 50, 781 P.2d 322 (Ct.App.1989) (showing by respondent and Subsequent Injury Fund held sufficient to support reduction based on number of weeks for which compensation benefits were due under lump sum settlement made three months before subsequent accidental injury for which additional compensation benefits were awarded); *Lea County Good Samaritan Village v. Wojcik,* 108 N.M. 76, 766 P.2d 920 (Ct. App.1988) (method of proof for determining

overlapping benefits outlined and means of proof detailed; showing by Fund as to prior lump sum settlement held insufficient to support reduction).

■ In this case, there was no prior determination of disability. However, this court has indicated that Section 52–1–47(D) "is not merely a device for preventing a double recovery. It is an affirmative allocation of the burden in a successive injuries situation." *Maes v. John C. Cornell, Inc.*, 86 N.M. 393, 398, 524 P.2d 1009, 1014 (Ct. App.1974). The absence of a prior determination of disability does not preclude the application of the statute. *See Urioste v. Sideris; Maes v. John C. Cornell, Inc.*

On appeal, subsequent employer contends that successive injuries contributed to the same period of disability. We do not think his contention is inconsistent with the statute. *See Maes v. John C. Cornell, Inc.* We do not mean to suggest that a subsequent employer will be allowed to pursue a worker's claim against a previous employer that the worker might have pursued but did not. We recognize that the Subsequent Injury Fund provides primary coverage for a disability that results from the aggravation of a preexisting condition. However, we see no reason not to permit the liability of a previous employer to be determined at the same time that the liability of a subsequent employer is being determined when, as here, the worker has joined both employers in a single lawsuit. We have sustained an apportionment under Section 52–1–47(D) when a worker was found totally temporarily disabled after two injuries within approximately six weeks. *See Urioste v. Sideris.* Nevertheless, neither *Gonzales* nor *Urioste* support the application of Section 52–1–47(D) on these facts.

■ On remand, however, the judge may proceed to determine the nature and extent, if any, of any permanent disability resulting from the accidental injury of April, 1986. The appropriate time to determine the nature and extent of permanent disability is after completion of the healing period and a determination of the need for vocational rehabilitation. *See Easterling v. Woodward Lumber Co.*, 112 N.M. 32, 810 P.2d 1252 (Ct.App.1991). The first step in making that determination will be to resolve whether or not worker's claim against previous employer is barred by the statute of limitations. We are mindful that the judge found that his claim was not time-barred. However, in reviewing the findings, it is not clear whether the judge misinterpreted the law regarding when worker knew or reasonably should have known he had a compensable claim. *See Zengerle v. City of Socorro*, 105 N.M. 797, 737 P.2d 1174 (Ct.App.1986). Findings induced by an incorrect interpretation of the law cannot stand on appeal. *See Walker v. L.G. Everist, Inc.*, 102 N.M. 783, 701 P.2d 382 (Ct.App.1985).

The judge's finding with respect to the statute of limitations does not indicate the basis on which it was made, and we are not otherwise able to determine that the judge properly applied the law in making the finding. The findings can be read to indicate that the judge believed he was only required to determine when, after the January, 1989 accident, worker knew or should have known he had a compensable injury. If so, this was incorrect.

On remand, in determining the nature and extent of any permanent disability, the judge should first determine the nature and extent of any permanent disability that is the natural and direct result of the first accidental injury and determine when worker knew or should have known that he had a compensable claim arising out of that accident. If the judge determines that worker's claim arising out of that accident is not time-barred, then he should make an appropriate award in favor of worker and against previous employer. Provided worker's claim against previous employer is not time-barred, previous employer will be liable to worker for compensation awarded with respect to disability that is the natural and direct result of the first accident.

The judge then should make a determination as to the nature and extent of permanent disability that is the natural and direct result of the accident of January, 1989. Provided worker's claim against previous employer is not time-barred, subsequent employer may be entitled to seek credit under Section 52–1–47(D). To obtain credit, subsequent employer must make a sufficient showing that there is an overlap within the meaning of *Munoz* between any sums for which subsequent employer is liable and any sums for which previous employer is liable. On this issue, subsequent employer will have the burden of proof. *See Lea County Good Samaritan Village v. Wojcik.*

In remanding this matter to the judge, we do not suggest how he should rule on any given issue. He may, in his discretion, accept additional evidence.

CONCLUSION.

At oral argument, all parties agreed that if the order was reversed, it should be reversed and remanded with directions to enter an amended order that subsequent employer was solely liable for the temporary total disability benefits awarded. Therefore, for the reasons stated above, we reverse the compensation order and remand with directions to the judge to order subsequent employer to pay one hundred percent of worker's compensation for total temporary disability and thereafter to proceed to determine the nature and extent of any permanent disability in a manner consistent with this opinion. We award worker $2,000 in attorney fees on appeal, payable by subsequent employer.

IT IS SO ORDERED.

ALARID, C.J., and CHAVEZ, J., concur.