824 P.2d 316

Joe ARAGON, Claimant–Appellant,

v.

STATE of New Mexico CORRECTIONS DEPARTMENT, Health & Environment Department, and the Travelers Insurance Company, Respondents–Appellees.

No. 12616.

Court of Appeals of New Mexico.

Sept. 24, 1991.

Certiorari Quashed Dec. 12, 1991.

E. Justin Pennington, Law Offices of E. Justin Pennington, Albuquerque, for claimant-appellant.

Robert P. McNeill, Albuquerque, for respondent-appellee State of New Mexico.

Bonnie M. Stepleton, Law Offices of Helen L. Stirling, Albuquerque, for respondent-appellee Travelers Ins. Co.

## OPINION

HARTZ, Judge.

In February 1983 appellant Joe Aragon (worker) suffered a herniation of the L5–S1 disk as the result of an accident while employed by the State of New Mexico Corrections Department (employer). He received medical and disability benefits under the Workers' Compensation Act. After corrective surgery he returned to full duty without any work restrictions until he left his employment in March 1987. In January 1988 worker suffered a herniation of the L3–4 disk and aggravation of the herniation at L5–S1 while attempting a repair on his personal truck at home. As he was lying underneath the vehicle, the transmission slipped out of place, requiring him to catch the transmission to avoid being struck in the head. Worker sought disability, medical, and rehabilitation benefits for his back condition after the 1988 accident, contending that he had a disability caused by the 1983 work accident.

The workers' compensation division (WCD) denied worker's claim. It rejected worker's proposed conclusion that his 1988 injury was a natural and direct consequence of the 1983 accident. It found that the 1988 accident "was an independent intervening event, which was not the direct or natural progression of any condition which resulted from the February 1983 accident," and that worker's disability and impairment were the direct and proximate result of the 1988 accident. We affirm.

Worker contends that he is entitled to the benefits sought if he can establish simply that the 1983 work accident was a contributing cause of his disability after the 1988 accident. In his view, as we understand it, he would be entitled to benefits if, for example, (1) the 1983 accident created a condition that was aggravated by the 1988 accident to create a disability or

(2) the injury caused by the 1983 accident combined with the injury caused by the 1988 accident to create the disability. He relies on a number of out-of-state cases and the following quotation from 1 A. Larson, *Workmen's Compensation Law* § 13.00 (1990) [hereinafter Larson]:

When the primary injury is shown to have arisen out of and in the course of employment, every natural consequence that flows from the injury likewise arises out of the employment, unless it is the result of an independent intervening cause attributable to claimant's own intentional conduct.

We disagree with worker's statement of the law and hold that the record before us supports the decision of the WCD to deny benefits to worker. Although the language quoted from Larson, *supra,* and language in several opinions cited by worker can be read to support worker's view, that broad view is inconsistent with the language of the New Mexico statute. Our more restricted view of what can satisfy the statutory requirements for recovery of benefits also finds support in Larson, *supra,* and is inconsistent with the holdings in at most only a very few reported decisions.

■ As stated by worker in his brief-in-chief, "[W]hether a disability resulting from the concurrence of a work related injury and *subsequent* non-work related injuries is compensable, is apparently a question of first impression in New Mexico." Therefore, we begin our analysis with the statutory language. Two sections of the Workers' Compensation Act deal with the causal relationship that must be established between an accident and a disability for the worker to recover benefits. NMSA 1978, Section 52–1–9 states:

The right to the compensation provided for in this act [52–1–1 to 52–1–69 NMSA 1978], in lieu of any other liability whatsoever, to any and all persons whomsoever, for any personal injury accidentally sustained or death resulting therefrom, shall obtain in all cases where the following conditions occur:

A. at the time of the accident, the employer has complied with the provisions thereof regarding insurance;

B. at the time of the accident, the employee is performing service arising out of and in the course of his employment; and

C. the injury or death is proximately caused by accident arising out of and in the course of his employment and is not intentionally self-inflicted.

For the sake of simplicity, throughout this opinion we refer to an "accident arising out and in the course of his employment" as a "work-related accident." There is no controversy here that the 1983 accident was work-related and the 1988 accident was not. Section 52–1–9 states, in essence, that the injury must be "proximately caused" by a work-related accident. The language of Section 52–1–9 has not been changed in any way material to this case since the original enactment of the statute in 1937.

In 1959, however, at the next regular session of the legislature after our supreme court struck down as unconstitutional the 1957 revamping of the Workmen's Compensation Act, *State v. Mechem,* 63 N.M. 250, 316 P.2d 1069 (1957) (establishment of commission to administer Workmen's Compensation Act constituted unlawful delegation of judicial power), the legislature enacted what is now NMSA 1978, Section 52–1–28 (Orig.Pamp.), which reads:

A. Claims for workmen's compensation shall be allowed only:

(1) when the workman has sustained an accidental injury arising out of, and in the course of, his employment;

(2) when the accident was reasonably incident to his employment; and

(3) when the disability is a natural and direct result of the accident.

B. In all cases where the defendants deny that an alleged disability is a natural and direct result of the accident, the workman must establish that causal connection as a medical probability by expert medical testimony. No award of compensation shall be based on speculation or on expert testimony that as a

medical possibility the causal connection exists.

This section supplements the proximate-cause requirement of Section 52–1–9(C) with a natural-and-direct-result requirement. We infer that there is a difference between the natural-and-direct-result requirement and the proximate-cause requirement. Otherwise, there would be no reason for the legislature not to use the "proximate cause" language in Section 52–1–28 that it used in Section 52–1–9. The legislature was undoubtedly aware of the language of Section 52–1–9 and could have repeated the proximate-cause test if it did not intend to impose a further condition on recovery. We note that Section 52–1–28 did repeat other language of Section 52–1–9; it tracked Section 52–1–9 in using the phrase "arising out of, and in the course of, his employment." *See T.W.I.W., Inc. v. Rhudy*, 96 N.M. 354, 630 P.2d 753 (1981) (courts should avoid construing statute so as to render part of it surplusage).

■ To say that the natural-and-direct-result test adds to the proximate-cause test does not, however, fully define the meaning of the additional test. In *Stuckey v. Furr Food Cafeteria*, 72 N.M. 15, 16, 380 P.2d 172, 173 (1963), our supreme court construed the words "natural and direct" to "signify an understandable and reasonable proximity of cause and effect as distinguished from remote and doubtful consequences resulting from a given occurrence." The court's language, although useful in the case in which it appeared, provides little guidance for the present situation, in which we must consider the significance under our statute of a non-work-related accident subsequent to a work-related accident. For further guidance, we turn to the dictionary. "Direct" is defined as "without intervening persons, influences, factors, etc." *The Random House Dictionary of the English Language* 407 (unabridged ed. 1971). Drawing on this definition, we construe "a natural and direct result" to mean a result that occurs in the natural course of life without intervening events.

■ This definition not only fits the ordinary meaning of the language used by the legislature, *see Orcutt v. S & L Paint Contractors, Ltd.*, 109 N.M. 796, 791 P.2d 71 (Ct.App.1990) (words of statute should be interpreted as having their ordinary meaning, absent indication of contrary legislative intent), but also makes sense as a rational limitation on the benefits provided under the Act. Under our interpretation of the statute, a worker is entitled to benefits for disability arising immediately from a work-related accident and for disability that develops later as a result of the normal activities of life. The worker is not, however, provided an insurance policy of indefinite duration to cover every non-work-related accident that magnifies the original injury. *See Brackett v. A.C. Lawrence Leather Co.*, 559 A.2d 776, 778 (Me. 1989) (Glassman, J., dissenting) ("Nothing in the Workers' Compensation Act indicates that the Legislature intended that employers be general disability insurers for non-work-related injuries suffered by an employee.").

The full meaning of "natural and direct result" in the context of a non-work-related injury subsequent to a work-related injury will need to be developed case by case. To avoid misunderstanding, we emphasize two limitations on our present holding.

First, there is no contention by worker that the fall of the transmission was in some way caused by his earlier work-related back injury. Our holding here is not inconsistent with *Chavez v. Industrial Commission*, 714 P.2d 1328 (Colo.Ct.App. 1985), in which benefits were awarded when worker fell in her driveway due to ankle weakness caused by a work-related injury. *See* Larson, *supra*, § 13.12. We need not resolve that issue in this opinion.

Second, our holding today would not bar recovery for disability resulting from aggravation of a work-related injury by the normal physical stresses of everyday life. In *Rich v. Vail Ballou Press, Inc.*, 33 A.D.2d 1088, 307 N.Y.S.2d 943 (1970), the worker was cutting plywood with a saw when he experienced an injury that proved to be disabling. There was testimony that

what happened while worker was using the saw was "one of a series of insignificant strains" since his work-related injury. The court affirmed the award of benefits. In *Di Simone v. Underwriters Adjusting Co.*, 91 A.D.2d 782, 457 N.Y.S.2d 1009 (1982), the worker felt pain after placing a package in his car six years after his initial work-related injury. A doctor testified that this was a recurrence or a re-exacerbation of the earlier injury, not a new accident. In *Doty v. Aetna Life & Casualty*, 217 Neb. 428, 350 N.W.2d 7 (1984), the worker suffered a recurrence of back pain when he bent over to kiss his two-year-old daughter. Our holding is not inconsistent with the holdings in those cases. We need not decide here whether, or in what circumstances, an aggravation of a preexisting work-related injury caused by the ordinary physical stresses of daily life is a "natural and direct result" of the work-related injury.

As we read Larson, *supra*, our holding is consistent with the view of that treatise. Although the quotation in Section 13.00 upon which worker relies may appear to be contrary to our view, we attribute the apparent discrepancy to the fact that the statement in Section 13.00 was an attempt to condense the variety of rules discussed in the numerous subsections of Section 13. When the treatise addresses more specifically the issue before us, it supports our view. Professor Larson writes:

> [O]nce the work-connected character of any injury, such as a back injury, has been established, the subsequent progression of that condition remains compensable so long as the worsening is not shown to have been produced by an independent nonindustrial cause.

Larson, *supra*, § 13.11(a), at 3–510. This sentence states the general proposition upon which our holding is based: recovery is not permitted when the worsening of the condition is produced by an independent nonindustrial cause.

The author then goes on to indicate that the routine physical stresses of daily life are not an "independent nonindustrial cause." In other words, aggravation of

work-related injuries that flow from such stresses are "natural and direct results" of the original injury. He writes:

> In a Utah case, claimant had suffered a compensable accident in 1966, injuring his back. Several years later, this condition was triggered by a sneeze into a disc herniation, for which claimant required surgery. The medical testimony was that because of the back condition, it was probable that had claimant not had the sneezing episode, some other major or minor event would have eventually necessitated surgery. The finding that the sneezing episode was the independent cause of claimant's disability, and the resultant denial of compensation, were held to be error, and benefits were awarded on appeal. This result is clearly correct. The presence of the sneezing incident should not obscure the true nature of the case, which is nothing more than that of a further medical complication flowing from a compensable injury. If the herniation had occurred while claimant was asleep in bed, [its] characterization as a mere sequel to the compensable injury would have seemed obvious. The case should be no different if the triggering episode is some nonemployment exertion like raising a window or hanging up a suit, *so long as it is clear that the real operative factor is the progression of the compensable injury, associated with an exertion that in itself would not be unreasonable in the circumstances.* A different question is presented, of course, when the triggering activity is itself rash in the light of claimant's knowledge of his condition.

*Id.* at 3–515 to –517 (emphasis added and footnotes omitted).

Worker appears to interpret Larson, *supra*, as saying that the subsequent accident is not an intervening cause barring benefits so long as it occurred while the employee was engaged in reasonable activity. He points out that it was reasonable for him to work under his vehicle and to catch the transmission when it was about to fall on him. We do not share this interpretation of Larson, *supra*. In the examples given in the above-quoted passage the

new injury was triggered by the normal movements themselves. It is reasonable to say that an injury resulting from the concurrence of a preexisting injury and the normal movements of everyday life is a "direct and natural result" of the original injury. It strains the meaning of "natural and direct result," however, to say that the phrase encompasses a subsequent injury precipitated by a severe and uncommon trauma.

The distinction we are making is illustrated in *Wilson v. Workers' Compensation Commissioner*, 174 W.Va. 611, 328 S.E.2d 485 (1984). *See* Larson, *supra*, § 13.11, at 3–502 to –503 n. 1.1. The West Virginia court considered three consolidated cases. A comparison of two of them is instructive. In one the worker reinjured his back while playing with his child on the floor. The court referred to the incident as a routine event and held that the worker's compensation case could be reopened. In a second case, however, the recurrence of disability was precipitated by an automobile accident. The court held that the case should not be reopened because "the automobile accident was an independent cause" and "an independent intervening cause not attributable to the claimant's customary activity cannot be related back to the original occupational injury." 328 S.E.2d at 491. Of course, riding in an automobile is as routine an activity as playing with a child, but the physical stress from the accident was not routine, whereas the stress of playing with the child was routine.

Returning to the case at hand, worker could not establish his entitlement to benefits simply by showing that his present disability was a consequence of aggravation of his 1983 injury. Nor could he establish his entitlement to benefits solely by showing that the 1983 injury contributes to his present disability.[1] To recover benefits, worker needed to convince the WCD that his 1988 disability was a direct and natural result of the 1983 injury—that is, a disability that arose from a combination of his 1983 injury and the normal physical strains of daily life.

Yet the WCD rejected worker's proposed conclusion (which could have been labelled as a finding) that his 1988 injury was a natural and direct result of his 1983 accident. On the record before us it was rational for the WCD to do so. *See Sosa v. Empire Roofing Co.*, 110 N.M. 614, 798 P.2d 215 (Ct.App.1990) (when a finding is made against the party bearing the burden of persuasion, the reviewing court will affirm if the fact-finder acted rationally). The WCD found (and worker does not challenge the finding) that worker had suffered no disability for more than four years prior to the 1988 accident. Dr. Barry Diskant testified that the force on worker's disks from abdominal pressure as he caught a transmission would be "tremendous,"[2] and that worker would probably not have herniated a disk if he had continued on his normal course from 1983, with no injuries such as the 1988 injury. He also testified that worker's present pain was due to instability at L3–4, which was not a natural and direct consequence of the 1983 injury. Dr. Robert Turner testified that the transmission incident caused the symptoms worker was experiencing. Dr. Steven

---

1. In any event, we read the WCD's findings as denying this possibility. It apparently was undisputed that part of worker's physical impairment at L5–S1 was caused by the 1983 accident. Yet the WCD found that worker's "disability and impairment are the direct and proximate result, to a medically reasonable probability, of the accident of January 6, 1988." Given the evidence at the hearing, we assume that the "impairment" referred to in the finding is the impairment causing worker's disability, from which it follows that any preexisting impairment caused by the 1983 accident was not contributing to the 1988 disability. *See Roybal v. Morris*, 100 N.M. 305, 669 P.2d 1100 (Ct.App. 1983) (findings should be construed so as to uphold rather than defeat the judgment). The evidence would support such a finding, since Dr. Barry Diskant testified that worker's pain arose at L3–4, and worker was not disabled by the L5–S1 impairment for several years prior to the 1988 accident.

2. Dr. Diskant spoke in terms of a transmission weighing 200 to 300 pounds. The source of that figure has not been brought to our attention, but worker's counsel did not dispute reference to the figure throughout several depositions of expert witnesses and the figure does not seem unreasonable.

Feagler testified that the stress of catching the transmission probably caused the L3–L4 disk herniation, and that he did not know whether worker would have continued without pain if there had been no 1988 incident.

Perhaps the record would have supported findings by the WCD that the physical stress from the transmission incident was no greater than the ordinary stress of normal daily activities and that worker's disability was a natural and direct result of the 1983 accident. But the record does not compel such findings. *See id.* Therefore, we affirm the judgment of the WCD.

IT IS SO ORDERED.

MINZNER, J., concurs.

CHAVEZ, J., dissents.

CHAVEZ, Judge (dissenting).

I respectfully dissent from the majority opinion. I believe the WCJ used an erroneous legal basis to make a finding of fact. Worker argues that, as a matter of law, if a disability is the concurrent result of a work-related accident and a non-work-related accident, the disability is compensable. Employer argues that the 1988 accident was an independent intervening (or precipitating) cause of worker's disability. Because the disability was due to a non-work-related accident, employer states that it should not compensate worker. This issue is resolved by first looking at NMSA 1978, Section 52–1–28(A)(3) (Repl.Pamp.1987), which defines causation of a disability as being "a natural and direct result of the accident." Nothing in the statute suggests the disability has to be the sole result, or may not be a concurrent result, of a work-related accident. Worker seems to suggest further, and I agree, that the plain words of the statute are ambiguous. I can find nothing, after searching New Mexico precedent, that addresses the exact question at hand.

To give meaning to the statute, worker cites many cases from other jurisdictions that have required compensation from an employer when its worker has suffered a non-work-related aggravation of a previous disability. Employer distinguishes these cases on the fact that the reinjury occurred while the worker was still disabled from the prior injury. *See, e.g., GTE Sylvania v. Workers' Compensation App. Bd.,* 73 Pa.Commw. 618, 458 A.2d 1050 (1983); *Di Simone v. Underwriters Adjusting Co.,* 91 A.D.2d 782, 457 N.Y.S.2d 1009 (1982). Worker's condition in this case had evidently stabilized long before the 1988 accident. However, that is a difference that does not necessarily matter. As one court put it, medical stabilization is evidence that a later reinjury is the sole cause of a later disability. That evidence does not, however, conclusively exclude the possibility that a prior accident was a part of the cause of a subsequent disability. *Town of Hudson v. Wynott,* 128 N.H. 478, 522 A.2d 974 (1986) (awarding compensation even though back injury stabilized prior to second injury).

Finding no guidance from New Mexico precedent or the cases in the briefs, I relied on Professor Larson for insight. He has analyzed the precedents on the subject of exacerbated pre-existing conditions. *See generally* 1 A. Larson, *The Law of Workmens' Compensation* § 13 (1990). More specifically with respect to aggravation of an originally compensable injury, he states:

[O]nce the work-connected character of any injury, such as a back injury, has been established, the subsequent progression of that condition remains compensable so long as the worsening is not shown to have been produced by an independent nonindustrial cause.... The case should be no different if the triggering episode is some nonemployment exertion like raising a window or hanging up a suit, so long as it is clear that the real operative factor is the progression of the compensable injury, associated with an exertion that in itself would not be unreasonable in the circumstances.

*Id.* § 13.11(a), at 3–510 to –517 (footnote omitted).

The following cases, cited in the margin of Larson's work, are analogous to this one. In *Brackett v. A.C. Lawrence Leather Co.,* 559 A.2d 776 (Me.1989), the worker injured his back at work in January 1978,

but returned to full duty in January 1979. In July 1985, he was involved in an automobile accident and sneezed the next day, reinjuring his back. The court stated that even though it was likely the auto accident was the major contributing factor to the worker's 1985 disability, the 1978 employer was liable for compensation because the evidence was that the 1978 accident was part of the cause of the 1985 disability. *Id.* In *In re Compensation of Grable*, 291 Or. 387, 631 P.2d 768 (1981), the worker injured his back in February 1978. He was released to full duties, but reinjured his back at home pulling steel pipe onto his roof. Because the evidence was that the prior injury was part of the cause of the later disability, the court reversed the denial of compensation. *Id.* In *Town of Hudson v. Wynott*, the worker injured his back in June 1976. He received medical treatment until September 1980. Between September 1980 and July 1983, the worker did not seek medical treatment for his back. In July 1983, the worker, at his own bait shop, lifted a styrofoam bait pail containing about a gallon of water and reinjured his back. The court held that, despite the three-year stabilization, the worker was entitled to benefits because the work-related incident was part of the cause of the subsequent disability and thus the direct and natural result of the work-related injury. *Id.* Finally, in *Rich v. Vail Ballou Press, Inc.*, 33 A.D.2d 1088, 307 N.Y.S.2d 943 (1970), the worker sustained a back injury in May 1962. In May 1966, he did not receive benefits and did not incur lost time, so the insurer closed his case. He suffered reinjury in August 1967. The evidence was that part of the cause of the 1967 disability was the 1962 injury. Therefore, the court concluded that the 1962 employer should have compensated the worker. *Id.*

In the *Brackett, Grable, Wynott* and *Rich* cases, there was an apparent end to a worker's back difficulties, much like the situation in this case. In each case, there was a non-work-related reinjury that occurred after the worker was apparently fully able to continue work, as in this case. In each case, the evidence was that part of the cause of the latter disability was the prior work-related injury, as in this case. There is nothing about the causation formulas in these cases that make their reasoning somehow inapplicable to the case at hand. Moreover, they support the view that Professor Larson's treatise concludes that, if worker's 1983 accident was in part the cause of his 1988 disability, that disability is compensable.

In sum, I believe that there may have been substantial evidence that there was no causal connection between the 1983 accident and the 1988 disability. Yet the record reflects a decision by the WCJ that, whether or not there was evidence of a causal connection, he was going to rule that there would be no compensation. He did so without considering whether the exertion leading to the 1988 accident was unreasonable under the circumstances of worker's condition. *See* 1 A. Larson, *supra* p. 3–517, § 13.11(a). There is no express finding that the 1983 accident was not part of the cause of the 1988 disability. Whether the 1983 accident was part of the cause was a central issue in the case. In fact, the WCJ's "benefits analysis" findings deal exclusively with the 1988 accident and disability. It is incongruous that the WCJ left such findings to inference from his rejection of all tendered findings not expressly adopted, unless he misunderstood the legal significance of the 1983 accident. On the peculiar state of this record, I think it manifestly just to remand for a rehearing, based on the evidence already in the record, in accordance with the legal principles described above. *See Garcia v. Mora Painting & Decorating*, 112 N.M. 596, 817 P.2d 1238 (Ct.App.1991).