2004-NMCA-023

85 P.3d 260

**James JOUETT, Worker–Appellant,**

v.

**TOM GROWNEY EQUIPMENT COMPANY, ACE USA, Patterson Drilling, Clearnan Insurance, Big Dog Drilling, and Highland Insurance Company, Employer/Insurer–Appellees.**

**No. 23,669.**

Court of Appeals of New Mexico.

Dec. 16, 2003.

Certiorari Granted, No. 28,482, Feb. 16, 2004.

Max Houston Proctor, Hobbs, NM, for Appellant.

Christina M. Bartosh, Sturges & Houston, P.C., Albuquerque, NM, for Appellees Tom Growney Equipment Co. and ACE USA.

Timothy R. Briggs, Jennifer L. Stone, Miller Stratvert P.A., Albuquerque, NM, for Appellees Patterson Drilling and Clearnan Insurance.

Thomas D. Haines, Jr., Mary Lynn Bogle, Hinkle, Hensley, Shanor & Martin L.L.P., Roswell, NM, for Appellees Big Dog Drilling and Highland Insurance Co.

## OPINION

VIGIL, Judge.

{1} In this worker's compensation case, James Jouett (Worker) suffered an accidental injury to his shoulder. He received medical treatment and continued working, but with pain to the injured shoulder. Worker was then employed by subsequent employers, and the pain to his injured shoulder became progressively more painful, until he could no longer work. The Workers' Compensation Judge (WCJ) denied medical and compensation benefits to Worker from Tom Growney Equipment Company (First Employer) on the ground that his work activity with the subsequent employers "materially aggravated Worker's shoulder condition" which "constituted an independent intervening event" that relieved First Employer of any further responsibility. We reverse, holding that there was no independent intervening cause. We also hold that if appropriate, First Employer is entitled to seek contribution from the subsequent employers.

## FACTS AND PROCEEDINGS

{2} Worker injured his left shoulder on January 19, 1999, while working for First Employer as a mechanic's helper. The compensation order found that this injury was accidental, arose out of and in the course of Worker's employment and that First Employer had legally sufficient notice. These findings are not challenged on appeal.

{3} The parties stipulated before trial that Worker saw Steven Hood, M.D. for the original shoulder injury in January 1999, and Dr. Hood had x-rays taken, which appeared normal. Dr. Hood diagnosed the problem as muscle strain. Worker did not lose any time from work for First Employer as a result of the original injury and continued working for First Employer until May 2000, when he left to take another job that paid more.

{4} From May 10–23, 2000, Worker worked for Patterson Drilling (Second Employer), a drilling company. On June 6, 2000, Worker went to work for Big Dog

Drilling (Third Employer). There were short periods of time during which Worker was not employed by Third Employer. During one of these periods, Worker was employed by Key Drilling. However, with the exception of these short interruptions, Worker worked for Third Employer from June 6, 2000, until he stopped working on December 14, 2001.

{5} Frank P. Maldonado, M.D. was the only treating physician whose deposition was taken and admitted into evidence at the formal hearing. He first saw Worker on May 15, 2001. After he received the results of several diagnostic tests, the doctor tentatively diagnosed Worker as suffering from shoulder pain caused by a bone spur that was impinging on the space between the shoulder joint and the shoulder blade. In his opinion, to a reasonable medical probability, Worker never reached maximum medical improvement after the original injury of January 19, 1999. On May 31, 2001, Dr. Maldonado recommended that Worker see Dr. Victor Brown for an arthroscopic evaluation based on his diagnosis of painful left shoulder, cause unknown, attributable to the January 19, 1999, injury to a reasonable degree of medical probability. If the arthroscopic evaluation showed an impingement syndrome, it was to be corrected during the evaluation itself.

{6} First Employer's insurer refused to pay for the arthroscopic evaluation or any further medical treatment, so Worker filed a claim against First Employer and its insurer. First Employer filed a response to Worker's claim, disclaiming all responsibility for medical or compensation benefits and alleging that Second or Third Employer or both were wholly responsible. At the mediation conference, Worker and First Employer agreed that Worker would file an amended complaint naming Second and Third Employers and their respective insurers as additional respondents. An amended complaint was then filed. At the time of trial, Worker still had not had the arthroscopic evaluation.

{7} While this was happening, Worker continued to work, first for Third Employer and then for Key Drilling in July 2001, and then for Third Employer again. By December 14, 2001, Worker's shoulder had become so painful and weak that he could no longer do the heavy labor required at his job for Third Employer. Worker stopped working for Third Employer and he again amended his claim seeking temporary total disability benefits as well as medical treatment.

**ISSUES ADDRESSED**

{8} We address: (1) whether the WCJ erred as a matter of law in determining that the work activity with the subsequent employers constituted an independent intervening cause which relieved First Employer of all responsibility for benefits, and (2) whether First Employer may seek contribution from any subsequent employers for benefits paid to worker. In light of our disposition of these issues, we do not address the remaining issues on the merits.

**1. First Employer Is Responsible for Worker's Medical Expenses and Payments for Worker's Temporary Total Disability**

{9} Worker argues that the WCJ erroneously concluded as a matter of law that under *Aragon v. State Corrections Department*, 113 N.M. 176, 824 P.2d 316 (Ct. App.1991), Worker's subsequent work activities with Second and Third Employer constituted an independent intervening cause, thereby relieving First Employer from a duty to provide benefits to Worker. First Employer argues that substantial evidence supports the determination. However, the question is not one of substantial evidence; it is whether the law was correctly applied to the facts. Thus, we review this issue de novo. *Hise v. City of Albuquerque*, 2003–NMCA–015, ¶ 8, 133 N.M. 133, 61 P.3d 842 (stating application of law to the facts is reviewed de novo on appeal); *see also Torres v. El Paso Elec. Co.*, 1999–NMSC–029, ¶¶ 14, 21, 127 N.M. 729, 987 P.2d 386 (stating independent intervening cause a question of policy, foreseeability and remoteness and holding that no instruction on independent intervening cause to be given in cases involving multiple acts of negligence); *Edens v. N.M. Health & Soc. Servs. Dep't*, 89 N.M. 60, 62, 547 P.2d 65, 67 (1976) (applying principle of de novo review to a determination of whether

an accidental injury "arose out of and in the course of the employment"). We agree with Worker that the subsequent work activities with Second and Third Employers do not constitute an independent intervening cause under *Aragon* and reverse.

{10} After a worker is injured on the job, the employer is statutorily required to provide "in a timely manner reasonable and necessary health care services from a health care provider." NMSA 1978, § 52–1–49(A) (1991). The statute requires those services to be provided "as long as medical or related treatment is reasonably necessary." *Id.* This is true even if the worker is not entitled to compensation benefits because the accidental injury never becomes disabling or because the worker's claim for compensation benefits is barred by the statute of limitations. *See Nasci v. Frank Paxton Lumber Co.,* 69 N.M. 412, 415, 367 P.2d 913, 916 (1961); *Barela v. Midcon of N.M. Inc.,* 109 N.M. 360, 365, 785 P.2d 271, 276 (Ct.App. 1989). The employer at the time of the accidental injury remains responsible for medical and related treatment even if the original accidental injury is later aggravated when the worker returns to work. *McMains v. Aztec Well Serv.,* 119 N.M. 22, 24–25, 888 P.2d 468, 470–71 (Ct.App.1994); *Beltran v. Van Ark Care Ctr.,* 107 N.M. 273, 276, 756 P.2d 1, 4 (Ct.App.1988).

{11} *Aragon* does not alter these duties. In *Aragon,* the worker suffered a herniated disc at L5–S1 when he was injured on the job in 1983. He received medical treatment and compensation benefits and eventually returned to full duty work without restrictions. *Aragon,* 113 N.M. at 177, 824 P.2d at 317. Under the law in effect at that time, Aragon was no longer disabled when he returned to work with no restrictions. *See* 1963 N.M. Laws ch. 295, § 19, repealed. Five years later, Aragon injured his back while working on his personal vehicle at his home. *Aragon,* 113 N.M. at 177, 824 P.2d at 317. He filed a claim for medical expenses and disability compensation for this second, non-industrial injury. *Id.* The medical evidence showed that Aragon's new pain resulted from a herniation of the L3–4 disc, which was caused entirely by the second, non-industrial acci-

dent. *Id.* at 181–82, 824 P.2d at 321–22. The WCJ denied the claim and this Court affirmed. *Aragon* addressed whether and to what extent a non-industrial event that causes a new injury or disability may be compensable.

{12} In *Aragon,* we stated that a worker could recover for a disability that results from a non-industrial event if the non-industrial event was in some way related to or caused by the earlier work-related injury. We gave the example of a worker whose ankle is impaired as the result of a work-related accidental injury and who later falls at home. If the non-industrial event, the fall at home, was caused by a residual weakness in the worker's ankle, an industrial cause, the worker would be entitled to additional medical and possibly compensation benefits. *Id.* at 179, 824 P.2d at 316. We reaffirm that holding. *Cf. Gomez v. Bernalillo County Clerk's Office,* 118 N.M. 449, 882 P.2d 40 (Ct.App.1994) (holding that a worker who fell at work, injuring her wrist and elbow, was not entitled to compensation for a later shoulder injury that was caused by a fall at home).

{13} We went on to say that "our holding today would *not* bar recovery for disability resulting from aggravation of a work-related injury by the normal physical stresses of everyday life." *Aragon,* 113 N.M. at 179, 824 P.2d at 319 (emphasis added). This Court is well aware that some conditions caused by work-related injuries deteriorate over time. *See, e.g., Henington v. Technical–Vocational Inst.,* 2002–NMCA–025, ¶ 5, 131 N.M. 655, 41 P.3d 923 (affirming increased benefits award for knee injury that doctor testified would ultimately require a knee replacement surgery at some point in the future); *Baca v. Complete Drywall Co.,* 2002–NMCA–002, ¶ 17, 131 N.M. 413, 38 P.3d 181 (addressing the situation that occurs when multiple disabilities are connected to one accidental injury; holding that a subsequent disability that is the result of the original injury and the normal events of everyday life is compensable); *Brewster v. Cooley & Assocs.,* 116 N.M. 681, 687, 866 P.2d 409, 415 (Ct.App.1993) (awarding worker medical benefits for back surgery that she would eventually need).

Our statement in *Aragon* was simply a reference to that type of situation. We also reaffirm that holding of *Aragon*.

{14} First Employer also argues that this case is more like *Salinas–Kendrick v. Mario Esparza Law Office*, 118 N.M. 164, 879 P.2d 796 (Ct.App.1994), and therefore Second or Third Employer or both should be liable. We disagree. At first glance, *Salinas–Kendrick* may appear similar to this case, because the on-the job accident occurred more than a year before the disability and there were two insurers, one that covered the risk at the time of the accident and a second that took over the coverage four months later and covered the risk for the ten months before the worker became disabled. In *Salinas–Kendrick*, we held that the insurer who covered the risk at the time the worker became disabled was responsible for medical and compensation benefits. However, there was no medical testimony in *Salinas–Kendrick* that the initial accident was causally connected to the subsequent need for medical treatment or to the subsequent disability. Such medical testimony is present in this case, making *Salinas–Kendrick* inapplicable.

{15} In summary, we hold that First Employer is liable for medical treatment and for the period of temporary total disability that began on December 15, 2001. Consequently, we reverse that portion of the compensation award and remand for entry of an order directing First Employer's insurer to immediately begin paying for medical and related services for Worker's shoulder, as well as temporary total disability benefits from December 15, 2001, forward. As we discuss below, nothing in this portion of our opinion precludes the WCJ on remand from determining that Second or Third Employer or any other subsequent employer is responsible to First Employer for a portion of the medical expenses or temporary total disability payments and related benefits.

## 2. Contribution

{16} We address this issue as a matter of judicial economy because it may arise on remand. We confine our discussion to whether, as a matter of law, the WCJ is barred from allocating responsibility for medical treatment or compensation and related benefits to any employer of Worker subsequent to the First Employer.

{17} We have already held that First employer is liable for medical treatment and for the period of temporary total disability that began on December 15, 2001. The WCJ also determined that the work activity with the subsequent employers "materially aggravated Worker's shoulder condition." We construe this to mean that Worker's shoulder pain increased while working for the subsequent employers. To this extent, we affirm the WCJ determination. However, until it becomes disabling, pain by itself is not compensable. *See Tallman v. ABF (Arkansas Best Freight)*, 108 N.M. 124, 131, 767 P.2d 363, 370 (Ct.App.1988) (noting worker suffered pain since 1977, but when he could no longer work in 1986, date of disability fixed); *Casias v. Zia Co.*, 93 N.M. 78, 80, 596 P.2d 521, 523 (Ct.App.1979) (stating compensation not payable until work-related accident produces an injury which becomes disabling).

{18} In this case, the physical condition of Worker's shoulder is unknown because the arthroscopic evaluation has not been performed. We address whether First Employer must remain liable for the entire cost for medical treatment, temporary total disability, and related benefits if the results of the arthroscopic study demonstrate that Worker's present disability is causally connected to his work for Second or any other subsequent employer. NMSA 1978, § 52–1–47(D) (1999) allows a *second* employer to reduce its payments to the extent payments would otherwise overlap payments made by a first employer. *Garcia v. Mora Painting & Decorating*, 112 N.M. 596, 599, 817 P.2d 1238, 1241 (Ct.App.1991); *Gonzales v. Stanke–Brown & Assocs.*, 98 N.M. 379, 386, 648 P.2d 1192, 1199 (Ct.App.1982). We refer to this remedy as "apportionment." However, this statute is of no assistance to First Employer and there is no similar provision giving relief where the First Employer is held initially responsible.

{19} The principle behind apportionment is to treat the employers and their insurance companies equitably when two successive injuries combine to produce the final

disability. *See Powers v. Riccobene Masonry Const., Inc.,* 97 N.M. 20, 25, 636 P.2d 291, 296 (Ct.App.1980); *Silva v. Maplewood Care Ctr.,* 582 N.W.2d 566, 568 (Minn.1998). Under this concept, the successive employers and their insurers are each required to contribute their proportionate share of the total responsibility for benefits when those benefits are awarded on the basis of a single rating of disability resulting from more than one compensable injury. *Id.* We hold that the same remedy is available to the First Employer and refer to it as "contribution." We do so to avoid the harsh result of making First Employer assume the entire cost for medical treatment or compensation and related benefits when subsequent injuries may have combined to produce a single disability. *See Grubelnik v. Four-Four, Inc.,* 2001-NMCA-056, ¶ 22, 130 N.M. 633, 29 P.3d 533 (stating situations exist in which Workers' Compensation Act does not provide all answers, and without an "explicit answer" to the question, "fundamental fairness" is to be the guide) (internal quotation marks omitted); *Lackey v. Darrell Julian Const.,* 1998-NMCA-121, ¶ 20, 125 N.M. 592, 964 P.2d 153 (making same statement).

{20} Our holding is consistent with other provisions of the Workers' Compensation Act, NMSA 1978, §§ 52-1-1 to -70 (1929, as amended through 2003), which require the allocation of fault and responsibility in other specific circumstances. *See* § 52-1-10.1 (providing that employer's right to reimbursement from third-party action brought by worker is to be diminished by percentage of fault attributed to employer); § 52-1-47(D) (providing second employer is entitled to reduction for compensation payments made by first employer to avoid duplication of benefits); § 52-1-65 (providing for credit for benefits furnished or paid under laws of other jurisdictions). It is also consistent with the public policy of New Mexico to apportion responsibility in proportion to the result caused by one's actions. *See Scott v. Rizzo,* 96 N.M. 682, 634 P.2d 1234 (1981) (adopting pure comparative negligence).

{21} We emphasize three points. First, contribution does not affect the obligation of the First Employer to pay worker all benefits he is entitled to. The claim for contribution is to be decided separate and apart from the compensation claim. In this way, Worker promptly gets the benefits he is entitled to without delay. *See Hammonds v. Freymiller Trucking, Inc.,* 115 N.M. 364, 369, 851 P.2d 486, 491 (Ct.App.1993) (stating a purpose of the Workers' Compensation Act is to ensure prompt compensation to a worker). Second, in order to obtain contribution, the First Employer must establish as to the subsequent employer that worker sustained an accidental injury arising out of and in the course of his employment; that the accident was reasonably incident to his employment; and that some portion of the disability is a natural and direct result of the accident. *See* § 52-1-28 (setting forth statutory requirements for a worker's compensation claim); *Garcia,* 112 N.M. at 601, 817 P.2d at 1243 (finding no apportionment due from first employer when worker was completely healed from first injury when he suffered second injury). Finally, the First Employer's claim for contribution is completely separate from and therefore not subject to the notice requirements and statute of limitations applicable to a worker's claim. *See* § 52-1-29(A) (stating worker claiming compensation from employer must give notice of accident to employer within fifteen days after worker knew, or should have known, of its occurrence); § 52-1-31 (stating claim must be filed not later than one year after failure or refusal of employer or insurer to pay compensation). Because the contribution claim is a third-party action brought by an employer against other employers that may be deemed liable for contribution, the general statute of limitations for contribution actions shall apply.

{22} In future cases raising similar issues, we suggest that an employer seeking contribution file third-party claims against any other potentially liable employers. However, in the present case, the potential employers are already parties. Therefore, First Employer may choose to file cross-claims against the successive employers if the medical evidence provides a good faith basis for such claims.

### 3. Remaining Issues

{23} Worker named Second and Third Employers as respondents after First Employer alleged in its response that it was not responsible and one or both of them were

responsible. Second and Third Employers have raised other issues relating to the claim made against them by Worker. We hold that Worker's claims against them were premature because the arthroscopic evaluation has not been performed and the condition of Worker's shoulder is unknown. Under these circumstances, we direct that all findings and conclusions made by the WCJ that relate to Second and Third Employer be vacated. This is to be without prejudice to any rights or claims that might arise after the arthroscopic evaluation is performed.

{24} Second Employer asserts that his motion to dismiss Worker's claim for failure to join Key Drilling was improperly dismissed. We do not consider this argument because Worker does not have the obligation to file a claim against any employer, except the employer who is responsible for the first injury. On remand, First Employer may file cross-claims or third-party complaints against any employer who may be liable for contribution.

**CONCLUSION**

{25} In summary, we hold that First Employer is responsible for payment of medical expenses and related services and compensation for temporary total disability. On remand, an order shall be entered directing First Employer to immediately begin paying for Worker's medical expenses and related services and to bring payment of temporary total disability benefits current. The WCJ may also conduct further proceedings consistent with this opinion, if requested, to determine the extent, if any, to which any subsequent employer shall share responsibility for Worker's medical expenses or compensation and related benefits. Finally, all findings and conclusions made by the WCJ relating to Second and Third Employer shall be vacated without prejudice to any rights or claims that might arise after the arthroscopic evaluation is performed.

{26} **IT IS SO ORDERED.**

WE CONCUR: CYNTHIA A. FRY and CELIA FOY CASTILLO, Judges.